## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK,

                Plaintiff,

     v.

UNITED STATES DEPARTMENT
OF LABOR; and EUGENE SCALIA,
*in his official capacity as Secretary of
Labor*,

             Defendants.

20 Civ. 3020

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      This lawsuit challenges a U.S. Department of Labor regulation that unlawfully narrows workers' eligibility for emergency family leave and paid sick leave guaranteed by the Families First Coronavirus Response Act, denying vital financial support and exposing millions of American workers and their communities to further transmission of infectious disease in the middle of a once-in-a-century pandemic.  *Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (the "Final Rule") (appended as Ex. 1).

2.      On January 30, 2020, the World Health Organization designated the coronavirus disease 2019 ("COVID-19") outbreak as a Public Health Emergency of International Concern. On March 11, the WHO declared COVID-19 a global pandemic.  *See* World Health Org., *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19* (internet) (Mar. 11, 2020).[1]

---

[1] *Available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

3.      The coronavirus pandemic has since swept across New York and the United

States and thrown the country into an unprecedented crisis with devastating consequences for

public health and the economy.

4.      On March 7, 2020, the Governor of New York declared a state of emergency to

address the threat that COVID-19 poses to the health and welfare of New York's residents and

visitors.  State of N.Y. Exec. Order 202, *Declaring a Disaster Emergency in the State of New

York* (Mar. 7, 2020).  And on March 13, 2020, the President declared a national emergency to

contain and combat the virus in the United States.  Proclamation 9994 of Mar. 13, 2020,

*Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)

Outbreak*, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

5.      For many, the virus can cause severe and life-threatening respiratory illness

marked by fever, coughing, and difficulty breathing.  *See* Centers for Disease Control &

Prevention, *Coronavirus Disease 2019 (COVID-19) Frequently Asked Questions* (internet) (last

updated Apr. 13, 2020).[2]  The disease is spreading extensively in communities throughout the

country, with cases reported in all fifty states.  *See* Centers for Disease Control & Prevention,

*Coronavirus Disease 2019 (COVID-19) Situation Summary* (internet) (last updated Apr. 7,

2020).[3]

6.      The virus has already exacted a tremendous toll on the nation and particularly on

New York and its residents, with the disease continuing to spread rapidly.  In the United States,

as of April 13, 2020, more than 554,000 individuals have confirmed cases of COVID-19 and

---

[2] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

[3] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html.

more than 21,940 people have died from the disease.  Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19): Cases in U.S.* (internet) (last updated Apr. 13, 2020).[4]

7.      In New York, which has become the current epicenter of the pandemic, more than 195,000 people have confirmed COVID-19 infections and more than 10,000 people have died from the virus—nearly half of the deaths in the entire country.  *See* N.Y. Dep't of Health, *COVID-19 Tracker* (internet) (last updated Apr. 13, 2020).[5]

8.      In New York City alone, there are currently more than 106,800 confirmed positive cases and 6,182 confirmed deaths.  *See* N.Y.C. Dep't of Health & Mental Hygiene, *COVID-19 Data: Cases, Hospitalizations and Deaths* (internet) (last updated Apr. 13, 2020).[6]

9.      In response to the pandemic, Congress has enacted a number of statutes, including those to appropriate emergency supplemental funding for the research and development of vaccines and to aid in prevention, preparedness, and response efforts.

10.      A critical part of Congress's response to the economic and public health disruption caused by the coronavirus pandemic was the March 18, 2020 enactment of the Families First Coronavirus Response Act ("FFCRA").  Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020) (appended as Ex. 2).

11.      The FFCRA requires job-protected emergency family leave and paid sick leave for employees unable to work because of the coronavirus pandemic.  These provisions codify the first-ever federal statutory right to paid leave for private sector workers in the country's history.

---

[4] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[5] *Available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no.

[6] *Available at* https://www1.nyc.gov/site/doh/covid/covid-19-data.page.

12.     As guaranteed by the FFCRA, paid sick leave reflects Congress's judgment that people who are sick with or exposed to an infectious disease should stay home instead of go to work.  And the statute's emergency family leave provisions reflect Congress's intent that parents whose children are forced to remain home from school or daycare because of the coronavirus should not be economically penalized because of the obligation to care for their families.

13.     Experts in infectious-disease control and public health have warned that everyone should minimize the spread of the virus to the greatest practicable extent, including by staying home as much as possible.  *See* Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19): How to Protect Yourself and Others* (internet) (last updated Apr. 13, 2020).[7] The FFCRA's paid leave provisions assist in accomplishing this essential public health directive by assuring that employees will not suffer economic hardship as a result of taking the necessary steps to protect themselves, their families, and their communities from devastating harm.

14.     On April 1, 2020, the Department of Labor released a final rule to implement the emergency family leave and paid sick leave requirements of the FFCRA.  *Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (to be codified at 29 C.F.R. Part 826); *see also Paid Leave Under the Families First Coronavirus Response Act; Corrections*, 85 Fed. Reg. 20,156 (Apr. 10, 2020) (correcting specified preamble and regulatory text) (appended as Ex. 3).

15.     The Final Rule conflicts with the plain language and purpose of the statute Congress enacted by, among other things, (1) codifying broad, unauthorized exclusions from employee eligibility that risk swallowing Congress's intended protections; and (2) creating from

---

[7] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

whole cloth new restrictions and burdens on employees that appear nowhere in the text Congress enacted.  The Final Rule thus undermines Congress's public health and economic security goals.

16.     Unless the challenged provisions are vacated, the Final Rule will have devastating consequences for New York and its residents.  Indeed, with approximately 95 percent of Americans now under some form of "stay at home" order because of the coronavirus pandemic,[8] the Final Rule's impacts will be felt by families all across the country.

17.     The State of New York therefore asks that the Court sever and vacate those provisions of the Final Rule that contravene the FFCRA.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a).  Jurisdiction is also proper under the judicial review provisions of the APA, 5 U.S.C. § 702.

19.     Declaratory and injunctive relief is sought consistent with 5 U.S.C. § 706 and as authorized in 28 U.S.C. §§ 2201 and 2202.

20.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities.  Plaintiff the State of New York is a resident of this judicial district, and a substantial part of the events or omissions giving rise to this Complaint occurred and are continuing to occur within the Southern District of New York.

---

[8] Sarah Mervosh, Denise Lu, & Vanessa Swales, *See Which States and Cities Have Told Residents to Stay Home*, N.Y. Times, Apr. 7, 2020, https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html.

## PARTIES

21.     Plaintiff the State of New York, represented by and through its Attorney General, is a sovereign state of the United States of America.  The Attorney General is New York State's chief law enforcement officer and is authorized under N.Y. Executive Law § 63 to pursue this action.

22.     New York is aggrieved by Defendants' conduct and has standing to bring this action because the Final Rule harms New York's sovereign, quasi-sovereign, economic, and proprietary interests and will continue to cause injury unless and until the challenged provisions of the Rule are invalidated.

23.     Defendant the United States Department of Labor is a cabinet agency within the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f).  DOL promulgated the Final Rule and is responsible for its enforcement.

24.     Defendant Eugene Scalia is the Secretary of Labor and is responsible for the operations of the Department of Labor.  29 U.S.C. § 551.  Secretary Scalia is sued in his official capacity.

## ALLEGATIONS

I.      **Federal statutory background.**

25.     On March 18, 2020, Congress enacted the Families First Coronavirus Response Act ("FFCRA").  Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020).

26.     As relevant to this lawsuit, the FFCRA provides certain workers up to ten paid sick days and up to twelve weeks of emergency family leave in response to the coronavirus pandemic.  FFCRA §§ 3101-3106, 5101-5111, 7001-7005.

27.     Up to 61 million employees are potentially eligible for emergency family leave or paid sick leave under the FFCRA.  85 Fed. Reg. at 19,345.

6

28.     On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").  Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020) (appended as Ex. 4).

29.     The CARES Act amended the FFCRA in part and provided additional technical corrections, as described below.  *See* CARES Act §§ 3601-3602, 3604-3606, 3611, 19008.

**A.     The Emergency Family and Medical Leave Expansion Act.**

30.     Division C of the FFCRA is the Emergency Family and Medical Leave Expansion Act ("EFMLEA").  FFCRA §§ 3101-3106.

31.     The EFMLEA took effect on April 2, 2020, *see id.* § 3106; and temporarily expands the Family and Medical Leave Act ("FMLA") through December 31, 2020.  *See* FFCRA § 3102(a)(1) (adding FMLA § 102(a)(1)(F)).

32.     The EFMLEA requires private sector employers with fewer than 500 workers, and government entities, to provide up to twelve weeks of leave ("emergency family leave") for employees who have been on the job for at least thirty days and who are unable to work or telework because they have to care for a child due to the coronavirus.  *See* FFCRA §§ 3102(a)(2); 3102(b) (adding FMLA §§ 110(a)(1)(A), (a)(2)(A)).

33.     The EFMLEA provides that an employer of "an employee who is a health care provider or emergency responder may elect to exclude such employee" from the emergency family leave benefits provided by the Act.  *See* FFCRA § 3105.

34.     The first ten days for which an employee takes emergency family leave may be unpaid.[9]  *See* FFCRA § 3102(b) (adding FMLA § 110(b)(1)(A)).  After ten days, employees are

---

[9] An employee may be eligible for paid sick leave during the initial ten-day period of unpaid emergency family leave.  *See* FFCRA § 3102(b) (adding FMLA § 110(b)(1)(B)); *see also* FFCRA § 5102(a)(1)(5).

entitled to job-protected emergency family leave at two-thirds of their regular wages, up to a statutory cap, for the remaining ten weeks of the FMLA period.  *See* FFCRA § 3102(b) (adding FMLA § 110(b)(2)); *see also* CARES Act § 3601 (amending the statutory cap added at FMLA § 110(b)(2)(B)(ii)).

35.     The EFMLEA narrowly provides for limited exemptions from both employer coverage and employee entitlement to emergency family leave.

36.     First, the EFMLEA authorizes the Secretary of Labor to issue regulations exempting small businesses with fewer than 50 employees from the obligation to provide emergency family leave "when the imposition of such requirements would jeopardize the viability of the business as a going concern."  FFCRA § 3102(b) (adding FMLA § 110(a)(3)(B)); *see also* CARES Act § 3611(1) (technical correction to FMLA § 110(a)(3)).

37.     Second, the EFMLEA authorizes the Secretary to issue regulations "to exclude certain health care providers and emergency responders from the definition of eligible employee under [FMLA] section 110(a)(1)(A)."  FFCRA § 3102(b) (adding FMLA § 110(a)(3)(A)); *see also* CARES Act § 3611(1) (technical correction to FMLA § 110(a)(3)).

38.     Congress enacted a tax credit to cover the costs of EFMLEA benefits.  *See* FFCRA § 7003(a) ("In the case of an employer, there shall be allowed as a credit against the tax imposed by section 3111(a) or 3221(a) of the Internal Revenue Code of 1986 for each calendar quarter an amount equal to 100 percent of the qualified family leave wages paid by such employer with respect to such calendar quarter."); *see also id.* § 7004(a) (similar for self-employed individuals).

**B.     The Emergency Paid Sick Leave Act.**

39.     Division E of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA").

FFCRA §§ 5101-5111.  The EPSLA took effect on April 2, 2020, and expires on December 31,

2020.  *See id.* §§ 5108-5109.

40.     The EPSLA requires private sector employers with fewer than 500 workers, and

government employers, to provide employees who are unable to work or telework with paid sick

time off under certain circumstances.  *See* FFCRA §§ 5102, 5110(2).

41.     In particular, the statute requires an employer to provide paid sick time to an

employee who is unable to work or telework if the employee meets one of six qualifying

conditions, including that the employee: (1) "is subject to a Federal, State, or local quarantine or

isolation order related to COVID-19"; (2) "has been advised by a health care professional to self-

quarantine due to concerns related to COVID-19"; (3) "is experiencing symptoms of COVID-19

and seeking a medical diagnosis"; (4) is caring for an individual subject to a quarantine or

isolation order by the government or a health care professional; (5) is caring for a son or

daughter whose school or place of care is closed, or whose child care provider is unavailable,

because of COVID-19; or (6) "is experiencing any other substantially similar condition specified

by the Secretary of Health and Human Services in consultation with the Secretary of the

Treasury and the Secretary of Labor."  *Id.* §§ 5102(a)(1)-(a)(6).

42.     An employee experiencing one of the six qualifying conditions in FFCRA

§ 5102(a) may be denied paid sick leave by an employer if the employee "is a health care

provider or an emergency responder."  *Id.*  The statute provides that the term "health care

provider" has the same meaning given that term in the Family and Medical Leave Act.  *Id.*

§ 5110(4) (citing 29 U.S.C. § 2611).

43.    The EPSLA entitles full-time employees to 80 hours—or roughly two weeks—of job-protected paid sick leave.  *Id.* §§ 5102(b)(2)(A); 5104(1).  Part-time employees are entitled to job-protected paid sick time for the "number of hours equal to the number of hours that such employee works, on average, over a 2-week period."  *Id.* §§ 5102(b)(2)(B); 5104(1).  To the extent the employer has an existing paid leave policy, the employer may not require employees to use existing accrued leave before using this emergency leave.  *Id.* § 5102(e)(2)(B).

44.    Employees receive full wage replacement (up to a statutory cap) for leave necessitated by self-care (that is, leave authorized by the conditions specified at FFCRA §§ 5102(a)(1)-(a)(3)).  *See id.* §§ 5110(5)(A)(ii), (5)(B)(i); *see also* CARES Act § 3602.  For employees who are caring for another individual or a child whose school has closed, *see* FFCRA §§ 5102(a)(4)-(a)(6), wage replacement is available at two-thirds the employee's rate of pay (up to a statutory cap).  *See id.* §§ 5110(5)(A)(ii), (5)(B)(i), (5)(B)(ii); *see also* CARES Act § 3602.

45.    The EPSLA covers private employers with fewer than 500 employees.  *Id.* § 5110(2)(B)(i)(I)(aa).  The statute also covers public employers as defined in the Fair Labor Standards Act.  *Id.* §§ 5110(2)(B)(i)(I)(bb), (2)(B)(i)(III); *see* 29 U.S.C. § 203(x).

46.    As with the EFMLEA, the EPSLA narrowly provides for limited exemptions from both employer coverage and employee entitlement to paid sick leave.

47.    First, the EPSLA authorizes the Secretary of Labor to issue regulations exempting small businesses with fewer than 50 employees from the obligation to provide paid sick leave to care for a child whose school is closed or whose child care provider is unavailable "when the imposition of such requirements would jeopardize the viability of the business as a going concern."  FFCRA § 5111(2); *see id.* § 5102(a)(5); *see also* CARES Act § 3611(2) (technical correction to FFCRA § 5111).

10

48.     Second, the EPSLA authorizes the Secretary to issue regulations "to exclude certain health care providers and emergency responders from the definition of employee." *Id.* § 5111(1); *see id.* § 5102(a); *see also* CARES Act § 3611(2) (technical correction to FFCRA § 5111).

49.     As with the EFMLEA, Congress enacted a tax credit to defray the costs of EPSLA benefits for employers, so that the federal government covers the financial costs of such benefits.  FFCRA § 7001(a) ("In the case of an employer, there shall be allowed as a credit against the tax imposed by section 3111(a) or 3221(a) of the Internal Revenue Code of 1986 for each calendar quarter an amount equal to 100 percent of the qualified sick leave wages paid by such employer with respect to such calendar quarter."); *see also id.* § 7002 (similar with respect to self-employed individuals).

50.     The Congressional Budget Office and congressional Joint Committee on Taxation estimated that this tax credit, along with the tax credit to off-set EFMLEA benefits, would channel approximately $100 billion in federal funds over one year into employers' and employees' hands during the present crisis.[10]

**C.     Congress enacted these emergency family leave and paid sick leave provisions both to protect the public health and to provide economic security to working families.**

51.     Congress enacted the emergency family leave and paid sick leave provisions in the FFCRA both to stem the rate of coronavirus transmission—by encouraging sick or potentially exposed workers to stay home without economic penalty—and to protect the

---

[10] *See* Congressional Budget Office, *Preliminary Estimate of the Effects of H.R. 6201, the Families First Coronavirus Response Act* 12 (Apr. 2, 2020) ("[The Joint Committee on Taxation] estimates that [the FFCRA's tax credit provisions] will reduce revenues by about $95 billion and increase outlays by about $10 billion over the 2020-2021 period."), https://www.cbo.gov/system/files/2020-04/HR6201.pdf.

economic well-being of workers who must stay at home to care for their children during this period of unprecedented national disruption.

52. Representative Richard Neal, Chair of the House Committee on Ways and Means, described the FFCRA as "a historic emergency commitment to paid leave for the American family members affected by coronavirus," and explained that "[o]ne of our top priorities was to get Americans affected by coronavirus emergency paid leave so that they can pay their bills." 166 Cong. Rec. at H1687 (daily ed. Mar. 13, 2020).

53. Representative Kay Granger, Ranking Member of the House Committee on Appropriations, described the paid sick leave provisions as necessary because "[n]o one should have to choose between getting a paycheck or infecting other people." 166 Cong. Rec. at H1687 (daily ed. Mar. 13, 2020).

54. Representative Bobby Scott, Chair of the House Committee on Education and Labor, explained that the FFCRA "provides workers 14 days of emergency paid sick leave, so they are not forced to choose between their paycheck and their health. And it also provides . . . paid family and medical leave so that workers can take time off to care for themselves and their loved ones without losing their jobs." 166 Cong. Rec. at H1689 (daily ed. Mar. 13, 2020).

55. And in a statement regarding an unsuccessful effort to remove the emergency family leave and paid sick leave provisions from the FFCRA, Representative Rosa DeLauro, Chair of the House Appropriations Subcommittee on Labor, Health and Human Services, and Education, explained: "People are struggling now more than ever to make ends meet due to the coronavirus and the drastic measures necessary to fight its spread. As schools and businesses move online when possible—or close down outright—we need to make sure that working people and families have a backstop. Paid sick days and paid leave will help make that possible." Press

Release, Rep. Rosa DeLauro, *DeLauro Statement on Senator Johnson's Attempt to Remove Paid Sick Days and Paid Leave Proposal from House-Passed Coronavirus Response Bill* (internet) (Mar. 18, 2020).[11]

## II.  The "Paid Leave Under the Families First Coronavirus Response Act" rule.

56.     The Department released the Final Rule implementing the emergency family leave and paid sick leave provisions of the FFCRA on April 1, 2020, and published it in the Federal Register on April 6, 2020.  *Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. 19,326 (Apr. 6, 2020).  The Department published corrections to the Final Rule on April 10, 2020.  *Paid Leave Under the Families First Coronavirus Response Act; Corrections*, 85 Fed. Reg. 20,156 (Apr. 10, 2020).

57.     The Final Rule took effect on April 2, 2020, and expires on December 31, 2020. 85 Fed. Reg. at 19,349 (§ 826.10(b)).

58.     The Final Rule states that the Secretary promulgated the regulation "to assist working families facing public health emergencies arising out of the Coronavirus Disease 2019 (COVID-19) global pandemic."  *Id.* at 19,326; *see also id.* at 19,345 ("With the availability of paid leave, sick or potentially exposed workers will be encouraged to stay home, thereby helping to curb the spread of the virus and lessen the strain on hospitals and health care providers.  If employees still receive pay while on leave, they will benefit from being able to cover necessary expenses, and to continue to spend money to help support the economy.").

59.     The Final Rule purports to define statutory terms; implements the FFCRA's emergency family leave and paid sick leave entitlements; sets criteria for employee eligibility

---

[11] *Available at* https://delauro.house.gov/media-center/press-releases/delauro-statement-senator-johnson-s-attempt-remove-paid-sick-days-and.

and employer coverage; establishes employer and employee notice requirements; imposes

employee documentation obligations regarding the need for leave; addresses the intersection

between FFCRA leave and existing health care coverage or multiemployer plans; and

implements the FFCRA's compliance and enforcement provisions. *See generally id.* at 19,347-

57 (§§ 826.10-826.160); 85 Fed. Reg. at 20,157-58 (corrections).

60.     As described below, the Final Rule is contrary to the text of the FFCRA and

exceeds the authority delegated by Congress by authorizing unsupported exclusions from

employee eligibility, and by inventing new restrictions and burdens on employees that have no

support in the statute's text.

**A.      The Final Rule denies emergency family leave and paid sick leave if the
employer—for any reason—"does not have work" for the employee.**

61.     The Final Rule imposes a new "work availability" requirement that permits

employers to deny their workers emergency family leave or paid sick leave, with no statutory

basis.

62.     As noted, the FFCRA requires up to twelve weeks of emergency family leave (ten

weeks of which are paid) for employees who are unable to work or telework because they have

to care for a child due to the coronavirus.  FFCRA §§ 3102(a)(2); 3102(b) (adding FMLA

§§ 110(a)(1)(A), (a)(2)(A)); *see supra* ¶¶ 32, 34.

63.     The Final Rule adds a non-statutory constraint to an employee's entitlement to

emergency family leave, limiting employee eligibility to those circumstances where the

employer determines in the employer's sole discretion that the employer has work for the

employee.  *See* 85 Fed. Reg. at 19,350 (§ 826.20(b)(1)) ("An Eligible Employee caring for his or

her Son or Daughter may not take Expanded Family and Medical Leave where the Employer

does not have work for the Eligible Employee.").

64. Nothing in the text of the FFCRA limits an employee's entitlement to emergency family leave to those circumstances when the employer has work for the employee to perform on a particular day.

65. The FFCRA also requires an employer to provide paid sick time to an employee who is unable to work or telework if the employee meets one of six qualifying conditions. FFCRA §§ 5102(a)(1)-(a)(6); *see supra* ¶¶ 40-41.

66. As to three of these qualifying conditions—where the employee is subject to a governmental quarantine or isolation order, FFCRA § 5102(a)(1); the employee is caring for an individual subject to a governmental or medical quarantine order, *id.* § 5102(a)(4); or the employee is caring for a son or daughter whose school or place of care has been closed, *id.* § 5102(a)(5)—the Final Rule adds a non-statutory constraint to an employee's paid sick leave entitlement, limiting employee eligibility to those circumstances where the employer determines in the employer's sole discretion that the employer has work for the employee. *See* 85 Fed. Reg. at 19,349 (§ 826.20(a)(2)) ("An Employee Subject to a Quarantine or Isolation Order may not take Paid Sick Leave where the Employer does not have work for the Employee as a result of the order or other circumstances."); *id.* (§ 826.20(a)(6)) ("An Employee caring for an individual may not take Paid Sick Leave where the Employer does not have work for the Employee."); *id.* (§ 826.20(a)(9)) ("An Employee caring for his or her Son or Daughter may not take Paid Sick Leave where the Employer does not have work for the Employee.").

67. Nothing in the text of the FFCRA limits an employee's entitlement to paid sick leave to those circumstances when the employer has work for the employee to perform on each day.

68.     The Department's implementation of these provisions of the FFCRA unlawfully authorizes employers to deny workers their statutory right to emergency family leave and paid sick leave by unilaterally determining when the employer has work available on each of the days that the employee is otherwise categorically eligible for leave.

###### B.     The Final Rule's definition of "health care provider."

69.     The FFCRA provides that an employee eligible for emergency family leave or paid sick leave may be excluded from leave benefits by an employer if the employee is a "health care provider."  FFCRA §§ 3105 (emergency family leave); 5102(a) (paid sick leave).

70.     Congress directed that "health care provider" have the same meaning in the FFCRA as that term has in the FMLA.  *Id.* § 5110(4) (citing 29 U.S.C. § 2611).

71.     The FMLA defines "health care provider" as "(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services."  29 U.S.C. § 2611(6).

72.     Still-binding Department regulations further define which other persons—similar to the licensed health care professionals expressly included within 29 U.S.C. § 2611(6)(A)—are "capable of providing health care services" under paragraph (B) of that definition.  29 C.F.R. § 825.102.  These persons include only other, similar health care professionals.  *Id.* (defining term to include, *inter alia*, "[p]odiatrists, dentists, clinical psychologists, optometrists, and chiropractors").

73.     Despite Congress's express direction, the Final Rule does not universally adopt the same definition of "health care provider" as is already codified and employed under the FMLA.

74.     Instead, for purposes of determining which employees may be excluded from the paid leave provisions of the FFCRA, the Final Rule adopts a far broader definition of "health care provider," to include:

a.  "anyone employed at any doctor's office, hospital, health care center, clinic, post-secondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that performs laboratory or medical testing, pharmacy, or any similar institution, Employer, or entity[,] [including] any permanent or temporary institution, facility, location, or site where medical services are provided that are similar to such institutions," 85 Fed. Reg. at 19,351 (§ 826.30(c)(1)(i));

b.  "any individual employed by an entity that contracts with any of these institutions described above to provide services or to maintain the operation of the facility where that individual's services support the operation of the facility," *id.* (§ 826.30(c)(1)(ii)); and

c.  "anyone employed by any entity that provides medical services, produces medical products, or is otherwise involved in the making of COVID-19 related medical equipment, tests, drugs, vaccines, diagnostic vehicles, or treatments," *id.* (§ 826.30(c)(1)(ii)).

75.     The Final Rule's definition of "health care provider" for employee exclusion purposes expands that term far beyond both its plain meaning and the FMLA definition, to include—for example—a teaching assistant or librarian at a university; employees who manage the dining hall or information technology services at a medical school; the cashier at a hospital

gift shop; and anyone employed by any contractor to any entity listed in the Final Rule, including all employees of a payroll processing firm or vending-machine resupplier.

76.     This definition of "health care provider" exposes millions of American workers to exclusion from emergency family leave and paid sick leave as authorized by the FFCRA.  *See* 85 Fed. Reg. at 19,343 (estimating that 9 million workers in the health care industry are potentially excluded from protection under the Department's definition, an estimate that the Department acknowledges is likely underinclusive because it "may not . . . include employees who provide services to the health care industry").

77.     The Final Rule does not identify any statutory basis for adopting so expansive a definition of "health care provider."

**C.     The Final Rule's intermittent leave provisions.**

78.     The Final Rule limits intermittent leave—that is, leave taken in separate periods of time—to certain of the qualifying leave conditions, and only if the employer affirmatively agrees to allow it.  85 Fed. Reg. at 19,353 (§§ 826.50(a)-(c)).  Absent the employer's agreement, all paid leave must be taken in "one continuous period."  *Id.* (§ 826.50(a)).

79.     In regulating intermittent leave with the employer's consent, the Final Rule differentiates between employees who are reporting to their normal worksite and those who are teleworking.  *Id.* (§§ 826.50(b), (c)).

80.     For employees who are reporting to a worksite, the Final Rule allows intermittent leave only for employees who are taking emergency family leave or who are taking paid sick leave to care for a child whose school is closed.  *Id.* (§ 826.50(b)(1)).  These employees may only take intermittent leave with the approval of their employer.  *Id.*  For employees reporting to a worksite and taking paid sick leave as allowed by any of the other qualifying conditions, intermittent leave is categorically prohibited.  *Id.* (§ 826.50(b)(2)).

81.     Employees who are teleworking must take emergency family leave or paid sick leave in "one continuous period" unless the employer affirmatively agrees to permit intermittent leave.  *Id.* (§ 826.50(c)).

82.      Nothing in the FFCRA authorizes the Department to grant employers the ability to deny paid leave to an employee who is otherwise entitled solely because the employer prefers that the leave be taken in one continuous period.

83.     The FMLA, which the EFMLEA amends, specifically includes an employer-agreement limitation to the use of family leave only under certain of the qualifying family leave conditions.  29 U.S.C. § 2612(b)(1).  Congress did not apply this limitation to emergency family leave under the FFCRA.  *See* FFCRA § 3102(a)(1) (adding FMLA § 102(a)(1)(F)).

84.     For paid sick leave purposes, the EPSLA refers to an employee's sick leave allowance in hours or increments of time; not as one continuous, uninterrupted period.  The EPSLA defines "paid sick time" as "an *increment* of compensated leave that . . . is provided by an employer for use during an absence from employment for a reason" allowed under the statute.  FFCRA § 5110(5)(A)(i) (emphasis added).

85.     The EPSLA further provides that employees are "entitled to paid sick time for an *amount of hours*" that is calculated based on the employee's status as a full-time or part-time worker.  *Id.* § 5102(b)(2) (emphasis added); *see also id.* § 5102(d) ("An employer may not require . . . that the employee involved search for or find a replacement employee to cover the *hours* during which the employee is using paid sick time.") (emphasis added).

86.     The Final Rule imposes a "continuous usage" obligation on an employee's use of emergency family leave and paid sick leave that is not authorized by the FFCRA.

**D.    The Final Rule's requirement that employees provide their employers with extensive documentation related to their request for paid leave.**

87.    The Final Rule imposes an obligation on employees to provide their employer with extensive documentation supporting the need for paid leave, with no statutory basis.

88.    The Final Rule provides that *before* any employee may take emergency family leave or paid sick leave, the employee "is required to provide the Employer documentation containing the following information . . . (1) Employee's name; (2) Date(s) for which leave is requested; (3) Qualifying reason for the leave; and (4) Oral or written statement that the Employee is unable to work because of the qualified reason for leave." 85 Fed. Reg. at 19,355 (§ 826.100(a)); *see also id.* at 19,339 (signed statement from employee required).

89.    For employees whose need for paid sick leave is based on certain of the six qualifying conditions enumerated in the EPSLA, the Final Rule requires yet further documentation.  Employees who require paid sick leave because of a governmental or medical quarantine order must document for their employer "the name of the government entity that issued the Quarantine or Isolation order" or "the name of the health care provider who advised the Employee [or the individual being cared for] to self-quarantine due to concerns related to COVID-19." *Id.* (§§ 826.100(b)-(d)).

90.    Employees who require paid sick leave to care for a child whose school is closed, or who require emergency family leave, must also provide documentation that includes their child's name, the name of the school or care provider that has become unavailable, and "[a] representation that no other suitable person will be caring for the Son or Daughter during the period for which the Employee" takes leave. *Id.* (§ 826.100(e)).

91.    In connection with any request for emergency family leave or paid sick leave on any basis, "[t]he Employer may request an Employee to provide such additional material as

needed for the Employer to support a request for tax credits pursuant to the FFCRA." *Id.*
(§ 826.100(f)).  The Final Rule further provides that "[t]he Employer is not required to provide
leave if materials sufficient to support the applicable tax credit have not been provided." *Id.*  The
Final Rule cites sub-regulatory guidance issued by the Internal Revenue Service "[f]or more
information" on how employers may substantiate their eligibility to claim tax credits for
qualified leave wages.  *Id.* (citing Internal Revenue Service, *COVID-19-Related Tax Credits for
Required Paid Leave Provided by Small and Midsize Businesses FAQ* (Mar. 31, 2020),
https://www.irs.gov/newsroom/covid-19-related-tax-credits-for-required-paid-leave-provided-
by-small-and-midsize-businesses-faqs).

92.     The FFCRA does not include any provision authorizing Defendants to impose the
Final Rule's documentation requirements on workers as a precondition of taking emergency
family leave or paid sick leave.

93.     The FFCRA does not authorize Defendants to allow employers to deny otherwise
eligible workers their right to paid leave during this national emergency on the ground that the
employer has not yet collected information that may be requested of the employer by a separate
federal agency.

### III.    The Final Rule harms New York.

94.     The Final Rule harms New York's sovereign, quasi-sovereign, economic, and
proprietary interests.

95.     New York has protectable interests in the health and well-being of adults and
children who live in this State.  The Final Rule harms these interests.

96.     By limiting the availability of paid sick leave, the Rule likely will cause more
people to become infected with coronavirus, and thus cause New York to experience more
uncompensated care costs.  As the Department of Labor has long acknowledged, "[m]ultiple

studies have shown that paid sick leave greatly reduces the chance of employee injury and/or exposure to illness." *Establishing Paid Sick Leave for Federal Contractors*, 81 Fed. Reg. 67,598, 67,694 (Sept. 30, 2016).

97.     For example, "data from the outbreak of the 2009 H1N1 pandemic showed that individuals who were not paid for absences had a 4.4 percentage point greater chance of contracting an influenza-type illness than those with sick leave pay." *Id.* And "[a] study of Connecticut's paid sick leave law . . . found 18.8 percent of employers reported reduced presenteeism[12] and 14.8 percent reported a reduction in spread of illness." *Id.*

98.     It is currently well-understood that transmission of the coronavirus can occur at an exponential rate if unchecked by social distancing and isolation measures. *See* Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19): How to Protect Yourself and Others* (internet) (last updated Apr. 13, 2020).[13]

99.     Guidance from executive agencies and health authorities about the coronavirus reflects the paramount importance of social distancing and isolation measures to minimize the risk of coronavirus transmission and reduce strain on the healthcare system, including public and private hospitals. *See, e.g.*, State of N.Y. Exec. Order 202.8, *Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency* (Mar. 20, 2020) ("New York State on PAUSE" executive order directing all non-essential businesses to "reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m."). Orders curtailing

---

[12] According to the Department of Labor, "[w]hen sick employees attend their jobs, they engage in a practice known as 'presenteeism.' Presenteeism is detrimental to productivity, and increases the probability of workplace injury and illness, resulting in greater employer and employee costs." 81 Fed. Reg. at 67,694.

[13] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

standard operations by this and other Courts reflect this guidance as well.  *See, e.g.*, *In re Coronavirus/COVID-19 Pandemic*, No. 20-mc-00138-CM, Third Amended Standing Order M10-468 (S.D.N.Y. Mar. 31, 2020) (restricting visitors to courthouses in the Southern District of New York).

100.    One risk of denying paid sick leave is that there will be a "greater chance of contracting" coronavirus and an increase in the "spread of illness" due to workers who are economically compelled to be at work despite experiencing symptoms of illness or despite needing to be home to care for a family member.  81 Fed. Reg. at 67,694.

101.    The potentially exponential growth rate of coronavirus infection risks swamping infrastructure at public and private hospitals, where substantial life-saving treatment and equipment may be required for many who are infected.

102.    Although most New Yorkers have health insurance, more than one million residents of this state are uninsured.  *See* Greater N.Y. Hosp. Ass'n, *NYS Uninsured Rate Continues to Decline* (internet) (Oct. 7, 2019).[14]  Many who require hospital care or other medical care due to coronavirus infection therefore will not have the means to pay for it.

103.    More than 57% of New York's uninsured population (more than 570,000 people) lives in New York City.  *See id.*  Many of New York's uninsured are poor or low-income: more than 77% (approximately 776,000 people) had incomes below 400% of the federal poverty level.

104.    The coronavirus has had a disproportionate impact on New York's communities of color.  *See* N.Y. Dep't of Health, *COVID-19 Tracker: Fatalities* (internet) (last updated Apr.

---

[14] *Available at* https://www.gnyha.org/news/nys-uninsured-rate-continues-to-decline/.

13, 2020).[15]  These communities are also more likely to be without insurance coverage.  N.Y. State Health Found., *Success in the Empire State: Health Insurance Coverage Trends* (internet) (Nov. 14, 2017).[16]

105.    In addition, nearly one-quarter of all noncitizens residing in New York State—or more than 484,000 individuals—were uninsured in 2016.  *Id.*  The coronavirus does not discriminate based on citizenship status.

106.    Given these figures, it is likely that any increase in the infection rate caused by the unavailability of emergency family leave or paid sick leave will in turn increase uncompensated care costs for public and private hospitals in New York.

107.    In addition, many New Yorkers obtain their health insurance through Medicaid, the Children's Health Insurance Program, or other sources partially funded by the State.  New York pays health care costs for eligible low-income and moderate-income residents, including children, through a number of programs funded in whole or in part by the State.  To the extent there is an increase in any of those individuals being infected and requiring the services of a hospital or other health care provider, health insurance programs funded partially by the State will face increased expenses.

108.    The Final Rule also is likely to increase the administrative burden on the State, which administers unemployment insurance benefits for New Yorkers.

---

[15] *Available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n.

[16] *Available at* https://nyshealthfoundation.org/wp-content/uploads/2017/11/success-in-the-empire-state-health-insurance-trends-NY.pdf.

109.    Unemployment insurance weekly claims have spiked in the past three weeks to unprecedented levels.  *See* Press Release, U.S. Dep't of Labor, *Unemployment Insurance Weekly Claims* (internet) (Apr. 2, 2020) (reporting more than 6,648,000 first-time unemployment insurance claims during the week ending March 28, 2020, "the highest level of seasonally adjusted initial claims in the history of the seasonally adjusted series")[17]; Press Release, U.S. Dep't of Labor, *Unemployment Insurance Weekly Claims* (internet) (Apr. 9, 2020) (reporting an additional 6,606,000 first time unemployment insurance claims during the week ending April 4, 2020).[18]

110.    The Final Rule will likely exacerbate that problem.  As the Department of Labor previously stated, "[p]roviding paid sick leave to employees has been associated with decreased job separations.  In one 2013 study, the author showed that paid sick leave is associated with a decrease in the probability of job separation of 25 percent."  81 Fed. Reg. at 67,695.  Thus, the Final Rule's exclusion of many New York workers from paid leave benefits the statute would otherwise provide them is likely to increase separations from employment and—in turn—the burden on the State administering unemployment insurance programs.

111.    The Final Rule also is likely to cost the State tax revenue.  As the IRS has noted, although the emergency family leave and paid sick leave wages provided under the FFCRA are funded by tax credits to the *employer*, they are taxable income *to the employee*.  *See* Internal

---

[17] *Available at* https://oui.doleta.gov/press/2020/040220.pdf.

[18] *Available at* https://oui.doleta.gov/press/2020/040920.pdf.  These figures are more than thirty times larger than the average weekly unemployment insurance claims during the period immediately preceding the COVID-19 outbreak in the United States.  *See* Press Release, U.S. Dep't of Labor, *Unemployment Insurance Weekly Claims* (Mar. 12, 2020) (weekly claims averaged 214,000 over the prior four weeks), https://oui.doleta.gov/press/2020/031220.pdf.

Revenue Service, *COVID-19-Related Tax Credits for Required Paid Leave Provided by Small and Midsize Businesses FAQs*, Q&A No. 57 (internet) (Apr. 10, 2020).[19]

112.    Thus, denying paid leave benefits to an employee will reduce income tax revenue to the federal government, and consequently will reduce New York State tax revenue as well. Under New York Tax Law, for personal income tax purposes, a taxpayer's taxable income for state purposes is based on that taxpayer's federal adjusted gross income.  N.Y. Tax Law § 612(a) ("The New York adjusted gross income of a resident individual means his federal adjusted gross income as defined in the laws of the United States for the taxable year, with the modifications specified in this section.").

113.    Similarly, Congress enacted the paid leave provisions in part to ensure that employees would have funds to spend on necessities during this time of crisis.  85 Fed. Reg. at 19,345 ("If employees still receive pay while on leave, they will benefit from being able to cover necessary expenses, and to continue to spend money to help support the economy.").  Reducing individuals' available income not only hurts their ability to obtain necessities for them and their families, but also injures New York through reduced sales tax collections on some purchases.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Administrative Procedure Act—Not in Accordance with Law)

114.    Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

---

[19] *Available at* https://www.irs.gov/newsroom/covid-19-related-tax-credits-for-required-paid-leave-provided-by-small-and-midsize-businesses-faqs (Q&A 57).

115.    The Administrative Procedure Act provides that the Court "shall" "hold unlawful and set aside" agency action that is "not in accordance with law."  5 U.S.C. § 706(2)(A).

116.    The Final Rule violates the FFCRA because it unlawfully denies emergency family leave and paid sick leave to otherwise eligible employees if the employer determines, for any reason, that the employer does not have work for the employee.  This restriction is not authorized by, and conflicts with, the FFCRA.

117.    The Final Rule violates the FFCRA because it establishes an extraordinarily broad definition of "health care provider" for the purpose of excluding large classes of otherwise eligible workers from the FFCRA's emergency family leave and paid sick leave benefits.  This definition is not authorized by, and conflicts with, the FFCRA.

118.    The Final Rule is therefore "not in accordance with law" as required by the APA. 5 U.S.C. § 706(2)(A).

119.    Defendants' violation causes ongoing harm to New York and its residents.

## SECOND CLAIM FOR RELIEF

### (Administrative Procedure Act—Exceeds Statutory Authority)

120.    Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

121.    Under the Administrative Procedure Act, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

122.    Defendants may only exercise authority conferred by statute.  *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

123.    The Final Rule exceeds Defendants' authority under the FFCRA because it prohibits employees from taking their emergency family leave or paid sick leave intermittently

absent their employer's consent.  The FFCRA confers no authority on the Department to impose this eligibility limitation.

124.    The Final Rule exceeds Defendants' authority under the FFCRA because it conditions an employee's eligibility for emergency family leave or paid sick leave on the provision of extensive documentation to the employer, including such unspecified documentation as may be required by a separate federal agency.  The FFCRA confers no authority on the Department to impose this eligibility limitation.

125.    The Final Rule is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA.  5 U.S.C. § 706(2)(C).

126.    Defendants' violation causes ongoing harm to New York and its residents.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1.    Declare that the challenged provisions of the Final Rule are not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A);

2.    Declare that the challenged provisions of the Final Rule are in excess of the Department's statutory jurisdiction, authority, or limitations, or short of statutory right within the meaning of 5 U.S.C. § 706(2)(C);

3.    Issue an order holding unlawful, vacating, and setting aside the challenged provisions of the Final Rule;

4.    Award Plaintiff its reasonable fees, costs, and expenses, including attorneys' fees; and

5.    Grant such other and further relief as the Court deems just and proper.

DATED:  April 14, 2020             Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Eric R. Haren, *Special Counsel*
Fiona J. Kaye, *Assistant Attorney General*
Daniela L. Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the State of New York*