**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK,

               Plaintiff,

     v.

UNITED STATES DEPARTMENT
OF LABOR; and EUGENE SCALIA,
*in his official capacity as Secretary of
Labor*,

               Defendants.

20 Civ. 3020

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ....................................................................................2

I.     The COVID-19 pandemic. ..........................................................................2

II.    The Families First Coronavirus Response Act. ...........................................3

       A.     The Emergency Family and Medical Leave Expansion Act. .................3

       B.     The Emergency Paid Sick Leave Act. .................................................4

III.   The Final Rule implementing the FFCRA. ...................................................6

ARGUMENT .....................................................................................................6

I.     Standard of review. .....................................................................................7

II.    The Final Rule violates the APA because it is not in accordance with law ......................7

       A.     The Final Rule imposes work availability restrictions that unlawfully deny paid sick leave and emergency family leave if the employer—for any reason—"does not have work" for the employee. ...................................7

       B.     The Final Rule's definition of "health care provider" is contrary to the plain language of the statute. .......................................................11

III.   The Final Rule violates the APA because it exceeds the Department's statutory authority under the FFCRA. ...........................................................16

       A.     The Department has no statutory authority either to prohibit intermittent leave or to condition its use on employer consent . .................................17

       B.     The Department has no statutory authority to impose the Final Rule's documentation requirements as a precondition to taking leave. ...........................21

IV.   The Court should sever and vacate the challenged provisions of the Final Rule. ............23

CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACA Int'l v. FCC,*
885 F.3d 687 (D.C. Cir. 2018) ................................................................................................15

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC,*
692 F.3d 42 (2d Cir. 2012) .....................................................................................................15

*Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.,*
563 U.S. 776 (2011) ................................................................................................................23

*Carlson v. Postal Regulatory Comm'n,*
938 F.3d 337 (D.C. Cir. 2019) ...............................................................................................24

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................................................................7

*Citizens to Pres. Overton Park v. Volpe,*
401 U.S. 402 (1971) ..................................................................................................................7

*City of Arlington v. FCC,*
569 U.S. 290 (2013) ................................................................................................................16

*Dep't of Homeland Sec. v. MacLean,*
135 S. Ct. 913 (2015) ......................................................................................................18, 22

*Fin. Planning Ass'n v. SEC,*
482 F.3d 481 (D.C. Cir. 2007) ...............................................................................................15

*Graziadio v. Culinary Inst. of America,*
817 F.3d 415 (2d Cir. 2016) .....................................................................................................9

*Indep. Petroleum Ass'n of Am. v. Babbitt,*
92 F.3d 1248 (D.C. Cir. 1996) ...............................................................................................15

*Lopez v. Davis,*
531 U.S. 230 (2001) ..................................................................................................................9

*Louisiana Pub. Serv. Comm'n v. FCC,*
476 U.S. 355 (1986) ..................................................................................................................7

*MCI Telecomms. Corp. v. AT&T,*
512 U.S. 218 (1994) ................................................................................................................14

*MD/DC/DE Broadcasters Ass'n v. F.C.C.*,
    253 F.3d 732 (D.C. Cir. 2001) ....................................................................25

*Mem'l Hosp. v. Burwell*,
    812 F.3d 257 (2d Cir. 2016)........................................................................8

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*,
    894 F.3d 95 (2d Cir. 2018).............................................................. 7, 15-16

*New York v. U.S. Dep't of Health & Human Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019)......................................................7, 15

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018)...........................................................................12, 21

*United States v. Luongo*,
    11 F.3d 7 (1st Cir. 1993) ............................................................................18

*United States v. Smith*,
    945 F.3d 729 (2d Cir. 2019).......................................................................24

*Util. Air Regulatory Grp. v. E.P.A.*,
    573 U.S. 302 (2014) ...................................................................................14

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*,
    537 U.S. 371 (2003) ...................................................................................12

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003)...........................................................................9

FEDERAL STATUTES

5 U.S.C.
    § 551(13) .....................................................................................................24
    § 701(b)(2) ..................................................................................................24
    § 706(2) ...........................................................................................7, 16, 24

29 U.S.C.
    § 207(a)(2) ..................................................................................................18
    § 2611(6) .........................................................................................11-12, 15
    § 2612(a) ...........................................................................................8, 18, 22
    § 2613(a) .................................................................................................9, 12
    § 2620.........................................................................................................11, 15

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134
    Stat. 281 (Mar. 27, 2020)
    § 2102(a)(3)(A)(ii)(I)(jj) ................................................................................10
    § 3601 ..............................................................................................................4
    § 3611(1) ................................................................................................4, 5, 21

Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178
    (Mar. 18, 2020)
    §§ 3101-3106 ....................................................................................................3
    § 3102 ....................................................................................................... passim
    § 3105 ....................................................................................................4, 9, 14
    §§ 5101-5111 ...................................................................................................4
    § 5102(a) .................................................................................................. passim
    § 5103 ............................................................................................................22
    § 5110 ....................................................................................................... passim
    § 5111 ...................................................................................................5, 16, 22
    § 7001 ......................................................................................................5, 20
    § 7002 ......................................................................................................5, 23
    § 7003(a) .........................................................................................................4
    § 7004(d)(2) ..................................................................................................23

FMLA
    § 102(a)(1)(F) ............................................................................................3, 21
    § 110 ........................................................................................................ passim

**FEDERAL REGULATIONS**

29 C.F.R.
    § 825.102 ................................................................................................. 12-14
    § 825.305(b) ...................................................................................................22

*Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg.
    19,326 (Apr. 6, 2020) ................................................................................ passim

*Paid Leave Under the Families First Coronavirus Response Act; Corrections*, 85
    Fed. Reg. 20,156 (Apr. 10, 2020) .................................................................6

**STATE REGULATIONS**

N.Y. Exec. Order 202, *Declaring a Disaster Emergency in the State of New York*
    (Mar. 7, 2020) ...............................................................................................2

N.Y. Exec. Order 202.8, *Continuing Temporary Suspension and Modification of
    Laws Relating to the Disaster Emergency* (Mar. 20, 2020) ....................................19

N.Y. Exec. Order 202.14, *Continuing Temporary Suspension and Modification of
    Laws Relating to the Disaster Emergency* (Apr. 7, 2020) .......................................19

RULES

Fed. R. Civ. P. 56(a) ...................................................................................................7

MISCELLANEOUS AUTHORITIES

Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19): Cases in U.S.* (last updated Apr. 13, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.........................3

Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19) Situation Summary* (last updated Apr. 7, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html...........................2

Congressional Budget Office, *Preliminary Estimate of the Effects of H.R. 6201, the Families First Coronavirus Response Act* 12 (Apr. 2, 2020), https://www.cbo.gov/system/files/2020-04/HR6201.pdf ..........................................................6

Letter from Sen. Patty Murray & Rep. Rosa DeLauro to Eugene Scalia, Secretary, Department of Labor (Apr. 1, 2020), *available at* https://www.help.senate.gov/imo/media/doc/Murray-DeLauro%20-%20FFCRA%20Paid%20Sick%20Family%20Leave%20Oversight%20-%204-1-2020.pdf ...........................................................................................10

N.Y. Dep't of Health, *COVID-19 Tracker* (last updated Apr. 13, 2020), *available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no ..................................................................3

Oxford English Dictionary, Entry 29975 .....................................................................16

Proclamation 9994 of Mar. 13, 2020, *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 18, 2020)........................................................................................2

World Health Org., *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19* (Mar. 11, 2020), *available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.................................................2

## INTRODUCTION

Following the emergence of the worst public health and economic crisis in generations, Congress passed the Families First Coronavirus Response Act on March 18, 2020, to protect working families from being put to an impossible choice—go to work and risk infecting others, or stay home and forfeit a paycheck.  A watershed law designed to stem the tide of infection and financial ruin, the FFCRA requires employers to provide paid leave for workers who are or may be infected or need to care for children whose schools have closed, and provides federal payroll tax credits to finance that leave.  The Act covers an estimated 61 million workers—almost 40 percent of the American workforce.  The message of the Act is clear: stay home, put your family first, and be assured you will not suffer unfair economic harm as a result.

On April 1, 2020, however, the Department of Labor issued a rule that riddles the FFCRA's paid leave provisions with holes.  *Paid Leave Under the Families First Coronavirus Response Act*, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (the "Final Rule").  For many workers, if an employer decides no work is available, paid leave is disallowed.  Millions of others can be exempted from paid leave protections by being swept into a definition of "health care provider" that is leaps broader than what Congress enacted.  All workers can be forced to take leave all at once, despite shifting circumstances in government officials' response to the pandemic.  And despite the Department's acknowledgment that Congress intended to enable workers to leave work immediately, no leave need be permitted under the Final Rule unless a worker provides— before taking leave—documentation sufficient for two federal agencies.

These restrictions violate both the text and purpose of the FFCRA, and exceed authority granted by Congress.  Worse yet, they risk exposing millions of New Yorkers and Americans to the exact harms that Congress sought to mitigate.  Unless these restrictions are invalidated, many workers will be penalized for doing what Congress encouraged them to do: stay home.  The

Court should grant New York's motion for summary judgment and vacate the challenged restrictions to restore the FFCRA to its intended effect.

## STATEMENT OF FACTS

**I.    The COVID-19 pandemic.**

On January 30, 2020, the World Health Organization designated the coronavirus disease 2019 ("COVID-19") outbreak as a Public Health Emergency of International Concern; and on March 11, the WHO declared COVID-19 a global pandemic.  *See* World Health Org., *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19* (internet) (Mar. 11, 2020).[1]  The pandemic has swept across the country, causing an unprecedented crisis with devastating economic and public health consequences.  COVID-19 is spreading nationwide, with cases in all fifty States.  *See* Centers for Disease Control & Prevention, *Coronavirus Disease 2019 (COVID-19) Situation Summary* (internet) (last updated Apr. 7, 2020).[2]

On March 7, 2020, the Governor of New York declared a state of emergency to address the threat that COVID-19 poses to the health and welfare of New York's residents and visitors.  State of N.Y. Exec. Order 202, *Declaring a Disaster Emergency in the State of New York* (Mar. 7, 2020).  And on March 13, 2020, the President declared a national emergency.  Proclamation 9994 of Mar. 13, 2020, *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

The virus has exacted a tremendous toll on the nation and particularly on New York.  As of April 13, 2020, more than 554,000 individuals nationwide have confirmed cases of COVID-

---

[1] *Available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[2] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html.

19 and more than 21,940 people have died.  Centers for Disease Control & Prevention,

*Coronavirus Disease 2019 (COVID-19): Cases in U.S.* (internet) (last updated Apr. 13, 2020).[3]

In New York, the pandemic's current epicenter, more than 195,000 people have confirmed

COVID-19 infections and more than 10,000 people have died.  *See* N.Y. Dep't of Health,

*COVID-19 Tracker* (internet) (last updated Apr. 13, 2020).[4]

## II.     The Families First Coronavirus Response Act.

Congress already has enacted several Acts to respond to the economic and public health

disruption caused by the coronavirus pandemic.  The Families First Coronavirus Response Act

("FFCRA"), passed on March 18, 2020, is one such measure.  Pub. L. No. 116-127, 134 Stat.

178 (Mar. 18, 2020).  As relevant here, the FFCRA requires paid sick leave and emergency

family leave for employees unable to work because of the coronavirus pandemic.

### A.     The Emergency Family and Medical Leave Expansion Act.

Division C of the FFCRA is the Emergency Family and Medical Leave Expansion Act

("EFMLEA").  FFCRA §§ 3101-3106.  The EFMLEA took effect on April 2, 2020, *see id.*

§ 3106; and temporarily expands the Family and Medical Leave Act ("FMLA") through

December 31, 2020.  *See* FFCRA § 3102(a)(1) (adding FMLA § 102(a)(1)(F)).

The EFMLEA requires private sector employers with fewer than 500 workers, and

government entities, to provide up to twelve weeks of leave ("emergency family leave") for

employees who are unable to work or telework because they have to care for a child due to the

coronavirus.  *See* FFCRA §§ 3102(a)(2); 3102(b) (adding FMLA §§ 110(a)(1)(A), (a)(2)(A)).

An employer of "an employee who is a health care provider or emergency responder may elect to

---

[3] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[4] *Available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-
Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no.

exclude such employee" from the emergency family leave benefits provided by the Act.  *See*

FFCRA § 3105.  As with the EPSLA, the Secretary may issue regulations "to exclude certain

health care providers and emergency responders from the definition of eligible employee under

[FMLA] section 110(a)(1)(A)."  FFCRA § 3102(b) (adding FMLA § 110(a)(3)(A)); *see also*

Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,

§ 3611(1), 134 Stat. 281 (Mar. 27, 2020) (technical correction to FMLA § 110(a)(3)).

The first ten days for which an employee takes emergency family leave may be unpaid.[5]

*See* FFCRA § 3102(b) (adding FMLA § 110(b)(1)(A)).  After ten days, employees are entitled to

job-protected emergency family leave at two-thirds of their regular wages, up to a statutory cap,

for the remaining ten weeks.  *See* FFCRA § 3102(b) (adding FMLA § 110(b)(2)); *see also*

CARES Act § 3601 (amending the statutory cap added at FMLA § 110(b)(2)(B)(ii)).

Congress enacted a tax credit to cover the costs of EFMLEA benefits.  *See* FFCRA

§§ 7003(a) (describing tax credit equal to 100 percent of the qualified family leave wages paid

by the employer each calendar quarter), 7004(a) (similar for self-employed individuals).

### B.    The Emergency Paid Sick Leave Act.

Division E of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA"), which took

effect on April 2, 2020, and expires on December 31, 2020.  *See* FFCRA §§ 5101-5111.

The EPSLA requires private sector employers with fewer than 500 workers, and

government employers, to provide employees who are unable to work or telework with paid sick

time off under certain circumstances.  *See id.* §§ 5102, 5110(2).  The requirement applies if the

employee meets one of six qualifying conditions, including that the employee: (1) "is subject to a

---

[5] An employee may be eligible for paid sick leave during the initial ten-day period of unpaid
emergency family leave.  *See* FFCRA § 3102(b) (adding FMLA § 110(b)(1)(B)); *see also*
FFCRA § 5102(a)(1)(5).

Federal, State, or local quarantine or isolation order related to COVID-19"; (2) "has been advised by a health care professional to self-quarantine due to concerns related to COVID-19"; (3) "is experiencing symptoms of COVID-19 and seeking a medical diagnosis"; (4) is caring for an individual subject to a quarantine or isolation order by the government or a health care professional; (5) is caring for a son or daughter whose school or place of care is closed, or whose child care provider is unavailable, because of COVID-19; or (6) "is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor." *Id.* §§ 5102(a).  If one of these conditions is met, an employer may deny leave if the employee "is a health care provider or an emergency responder." *Id.*  The statute provides that "health care provider" has the same meaning given that term in the Family and Medical Leave Act ("FMLA"). *Id.* § 5110(4) (citing 29 U.S.C. § 2611).  The Secretary may issue regulations "to exclude certain health care providers and emergency responders from the definition of employee." *Id.* § 5111(1); *see also* CARES Act § 3611(2) (technical correction to FFCRA § 5111).

The EPSLA entitles full-time employees to 80 hours—or roughly two weeks—of job-protected paid sick leave. *Id.* §§ 5102(b)(2)(A); 5104(1).  Part-time employees are entitled to job-protected paid sick time for the "number of hours equal to the number of hours that such employee works, on average, over a 2-week period." *Id.* §§ 5102(b)(2)(B); 5104(1).

As with the EFMLEA, Congress enacted a tax credit to defray the costs of EPSLA benefits for employers, so that the federal government covers the financial costs of such benefits. FFCRA §§ 7001(a), 7002.  The Congressional Budget Office and congressional Joint Committee on Taxation estimated that this tax credit, along with the tax credit to off-set EFMLEA benefits, would channel approximately $100 billion in federal funds over one year into employers' and

employees' hands during the present crisis.[6]

### III.    The Final Rule implementing the FFCRA.

On April 1, 2020, the Department of Labor released a final rule to implement the

FFCRA's paid sick leave and emergency family leave provisions.  *Paid Leave Under the*

*Families First Coronavirus Response Act*, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (to be codified at

29 C.F.R. Part 826); *see also Paid Leave Under the Families First Coronavirus Response Act;*

*Corrections*, 85 Fed. Reg. 20,156 (Apr. 10, 2020) (correcting specified preamble and regulatory

text).  The Final Rule took effect on April 2, 2020, and expires on December 31, 2020.  85 Fed.

Reg. at 19,349 (§ 826.10(b)).

The Secretary purported to issue the rule "to assist working families facing public health

emergencies arising out of the Coronavirus Disease 2019 (COVID-19) global pandemic."  *Id.* at

19,326.  The Final Rule explained that "[w]ith the availability of paid leave, sick or potentially

exposed workers will be encouraged to stay home, thereby helping to curb the spread of the virus

and lessen the strain on hospitals and health care providers."  *Id.* at 19,345.  The Final Rule also

noted that "[i]f employees still receive pay while on leave, they will benefit from being able to

cover necessary expenses, and to continue to spend money to help support the economy."  *Id.*

### ARGUMENT

Several provisions of the Final Rule are unlawful because they deny statutorily-

guaranteed and federally-financed leave during a time of public health and economic crisis in

violation of the FFCRA.  In particular, as set forth in more detail below, the Final Rule is

---

[6] *See* Congressional Budget Office, *Preliminary Estimate of the Effects of H.R. 6201, the*
*Families First Coronavirus Response Act* 12 (Apr. 2, 2020) ("[The Joint Committee on
Taxation] estimates that [the FFCRA's tax credit provisions] will reduce revenues by about $95
billion and increase outlays by about $10 billion over the 2020-2021 period."),
https://www.cbo.gov/system/files/2020-04/HR6201.pdf.

contrary to the text of the FFCRA and exceeds the authority delegated by Congress because it (1) creates unsupported exclusions from employee eligibility; and (2) invents new restrictions and burdens on employees that have no support in the statute's text.

## I.  Standard of review.

Courts must "hold unlawful and set aside" agency action that is "not in accordance with law" or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §§ 706(2)(A), (C).  The APA requires "plenary review of the Secretary's decision."  *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  APA claims are particularly "amenable to summary disposition" because "'[t]he entire case on review is a question of law.'"  *New York v. U.S. Dep't of Health & Human Servs.*, 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019).

## II.  The Final Rule violates the APA because it is not in accordance with law.

The Final Rule is not in accordance with law in two respects.  First, it unlawfully denies leave if an employer determines that it "does not have work" for the employee—a restriction found nowhere in the statute's text.  Second, it enables the denial of leave to large classes of employees that the plain text of the statute shows Congress did not intend to be exempt—by sweeping them into an expansive and unlawful definition of "health care provider."

### A.  The Final Rule imposes work availability restrictions that unlawfully deny paid sick leave and emergency family leave if the employer—for any reason—"does not have work" for the employee.

An agency has "no power to act . . . unless and until Congress confers powers upon it," *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986), and where Congress confers power to act in statute the agency is constrained by the terms Congress chose, *see Nat. Res. Def.*

*Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018) ("NRDC") ("It is well settled that an agency may only act within the authority granted to it by statute.").

The Final Rule allows employers to deny paid sick leave and emergency family leave to an employee if the employer determines—for any reason and in the employer's sole discretion—that the employer "does not have work" for the employee. *See* 85 Fed. Reg. at 19,349-50 (§§ 826.20(a)(2), (a)(6), (a)(9), (b)(1)) (collectively, the "work availability restrictions"). Specifically, the Final Rule states that with respect to three of the six qualifying conditions for paid sick leave, an employee may *not* take paid sick leave where the employer "does not have work" for the employee. *See* 85 Fed. Reg. at 19,349. These three circumstances are, in brief, being subject to a quarantine or isolation order; caring for an individual who is subject to a quarantine or isolation or who has been advised by a health care provider to self-quarantine; or caring for a child whose school is closed or childcare provider is unavailable. *Id.* (§§ 826.20(a)(2), (a)(6), (a)(9)). The Final Rule imposes the same restriction on an employee's eligibility for emergency family leave as well. *See id.* at 19,350 (§ 826.20(b)(1)).

These restrictions are unlawful. Neither the EFMLEA nor the EPSLA authorizes these additional eligibility criteria. First, both statutes operate as a mandate on the employer. The FMLA, to which the EFMLEA is added, states that an employee "*shall be entitled*" to leave for a series of reasons. 29 U.S.C. § 2612(a) (emphasis added). The EPSLA similarly states: "An employer *shall provide* to each employee employed by the employer" paid sick leave for six qualifying reasons. FFCRA § 5102(a) (emphasis added). The word "shall" is classic statutory language connoting a mandatory duty—not an option that can be ignored.[7] *Lawrence + Mem'l*

---

[7] The FFCRA's use of a broad definition of "employer" further emphasizes Congress's judgment that the FFCRA provisions are remedial in nature. The EFMLEA uses the FMLA definition of

*Hosp. v. Burwell*, 812 F.3d 257, 265 (2d Cir. 2016).

Congress delineated specific circumstances in which an employer "may" exempt an employee from leave or impose other conditions—for example, that an employer "may" exempt an employee who is a health care provider or an emergency responder. FFCRA §§ 3105, 5102(a); *see also* 29 U.S.C. § 2613(a) (employer "may require" medical certification). This delineation only confirms Congress's clear choice that the leave requirements be mandatory. "The statute's use of the permissive 'may' contrasts with Congress' use of a mandatory 'shall' elsewhere . . . to impose discretionless obligations." *Lopez v. Davis*, 531 U.S. 230, 231 (2001).

Moreover, the EFMLEA and EPSLA also plainly focus on whether a circumstance impacting the *employee*, or his or her family, makes the employee unable to work—not on whether some circumstance *of the employer* makes work unavailable. The text could not be clearer: the EFMLEA defines the triggering event for the leave requirement (the term "qualifying need related to a public health emergency") to mean "*the employee is unable to work (or telework) due to*" a particular circumstance. FFCRA § 3102(b) (adding FMLA § 110(a)(2)(A)) (emphasis added). The EPSLA uses the same phrase—"*the employee is unable to work due to*" a series of circumstances. FFCRA § 5102(a) (emphasis added). The *reasons* for leave, too, focus on circumstances impacting the employee or his or her family: each of the circumstances triggering the EPSLA's sick-leave requirement begins either with "*the employee is*" or the employee "*has been*." FFCRA §§ 5102(a)(1)-(a)(6) (emphases added). The statute's consistent focus on the employee's circumstances belies any contention that Congress intended these leave

---

that term, which the Second Circuit has held is based on the remedial standard used in the Fair Labor Standards Act ("FLSA"). *Graziadio v. Culinary Inst. of America*, 817 F.3d 415, 422 (2d Cir. 2016) (collecting cases). That standard "is necessarily a broad one, in accordance with the remedial purpose of the FLSA." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003). The EPSLA also relies on the FLSA's definition. FFCRA § 5110(2)(B).

requirements to be triggered but by the *employer's* circumstances instead.

Had Congress intended a different result, it would have said so.  Congress did cabin the

employer's duty in several other ways based on the employer's circumstances, confirming that

the additional limitation Defendants adopted in the Final Rule is unlawful.  For example,

Congress limited the FFCRA's paid leave coverage to employers with fewer than five hundred

employees.  FFCRA §§ 3102(b) (adding FMLA § 110(a)(1)(B)); 5110(2)(B)(i)(I)(aa).  It

provided the Secretary with authority to exempt small businesses in certain circumstances.  *Id.*

§§ 3102(b) (adding FMLA § 110(a)(3)(B)); 5111(2).  And it provided employers with discretion

to exclude certain health care providers or emergency responders—the FFCRA's only statutory

limitation based on an employer determination.[8]  *Id.* §§ 3105, 5102(a).  The utter absence of any

other statutory limitation based on an employer's discretion or circumstances is telling.

Finally, the work availability requirements defy the core purpose of the FFCRA—to

protect the economic well-being of workers while stopping the spread of COVID-19.  These

requirements create a loophole that is inconsistent with the overriding Congressional goals to

impede the rate of coronavirus transmission by encouraging sick workers to stay home without

economic hardship, and to protect the economic well-being of workers who must stay at home to

care for their children because of coronavirus-related school shut-downs.  *See, e.g.*, Letter from

Sen. Patty Murray & Rep. Rosa DeLauro to Eugene Scalia, Secretary, Department of Labor

(internet) (Apr. 1, 2020) (describing Defendants' work availability restrictions as "a particularly

outrageous outcome when viewed in the context in which Congress passed the FFCRA: a nation-

wide social distancing directive and several state-wide orders to shelter in place.  Under these

---

[8] The CARES Act also makes clear that when Congress wanted to make a benefit related to
COVID-19 dependent on a circumstance of the employer, it said so.  *E.g.*, CARES Act
§ 2102(a)(3)(A)(ii)(I)(jj).

circumstances, several businesses will obviously not have work to assign to employees, and

Congress intended for such workers to still qualify for paid leave in such instances—otherwise,

the purpose of the Act would be entirely defeated . . . .")[9]; *see also* Compl. ¶¶ 51-55.

Defendants' work availability requirements violate the FFCRA and should be vacated.

**B.     The Final Rule's definition of "health care provider" is contrary to the plain language of the statute.**

The Final Rule also violates the FFCRA by taking a narrow, statutorily defined group of

health care providers and shoehorning into it into an enormous class of millions of workers for

the purpose of denying them the FFCRA's paid leave protections.  Congress intended these

workers to be protected—not that Defendants be empowered to deny protection to any worker

with some tenuous connection to health care.  The Final Rule's construction conflicts with the

statute and exceeds all bounds of reasoned interpretation.

In the FFCRA, Congress adopted the existing definition of "health care provider" under

the FMLA.  The EFMLEA amended the FMLA by adding a new Section 110 to that statute,

codified at 29 U.S.C. § 2620.  *See* FFCRA § 3102(b).  And the FMLA already includes a

definition of "health care provider," *see* 29 U.S.C. § 2611(6), which the emergency family leave

provisions of the FFCRA nowhere revise.  The emergency family leave provisions—codified as

an addition to the FMLA—are thus plainly governed by the FMLA's definitions section.

Likewise, the EPSLA expressly directs that the term "health care provider" has the "meaning[]

given such term[] in section 101 of the [FMLA] (29 U.S.C. 2611)."  FFCRA § 5110(4).

Congress's design to ensure that "health care provider" has the same meaning in the FFCRA

leave provisions as in the FMLA is thus an "unmistakable command" the agency must follow.

---

[9] *Available at* https://www.help.senate.gov/imo/media/doc/Murray-DeLauro%20-
%20FFCRA%20Paid%20Sick%20Family%20Leave%20Oversight%20-%204-1-2020.pdf.

*SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018).  And "[w]here a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer."  *Id.*

The FMLA definition is limited, essentially, to licensed medical professionals who provide medical services to an individual.  To begin, the text of the FMLA defines health care provider as: "(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services."  29 U.S.C. § 2611(6).  The language of subparagraph (B) is naturally read to refer to other licensed professionals who provide health care services to individuals—because, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar to those enumerated by the specific words."  *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 372 (2003).

That understanding is confirmed by context: the phrase "health care provider" is relevant under the FMLA because only a "health care provider" can provide the necessary diagnostic certification that an individual meets any requirements to take leave and to return to work.  29 U.S.C. §§ 2613(a) ("An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee"); 2614(a)(4) (same, in order "to resume work").

The Department's still-binding FMLA regulation is consistent with this understanding as well: 29 C.F.R. § 825.102 contains a list of other professionals who can be health care providers under the FMLA's definition.  The list "include[s] only" providers who are "authorized to practice" under applicable law, and is limited to podiatrists, dentists, clinical psychologists,

optometrists, chiropractors, nurse practitioners, nurse-midwives, clinical social workers,

physician assistants, and Christian Science Practitioners.[10]  Indeed, in the Final Rule itself, the

Department acknowledges that its existing regulatory definition of "health care provider" as used

in the FMLA "mean[s] medical professionals who are capable of diagnosing serious health

conditions."  85 Fed. Reg. at 19,334.

Other statutory provisions confirm this ordinary meaning of the term "health care

provider" as a licensed health professional who provides services to an individual.  For example,

one of the six qualifying conditions that entitles an employee to paid sick leave under the

FFCRA is that the "employee *has been advised by a health care provider* to self-quarantine."

FFCRA § 5102(a)(2) (emphasis added).  Similarly, the FFCRA provides for coverage, without

cost-sharing (*i.e.*, copayments or deductibles), for "health care provider office visits" that result

in a COVID-19 test.  *Id.* § 6001(a)(2).

The Final Rule, however, includes within the term "health care provider" whole swaths

of individuals who are plainly not health care providers under the FMLA—and thus denies them

and their families the FFCRA's vital statutory protections and associated federal financial

support during a crisis.  The Final Rule defines "health care provider" to include, among others:

- "anyone employed at any doctor's office, hospital, health care center, clinic, post-secondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that performs laboratory or medical testing, pharmacy, or any similar institution, Employer, or entity[,] [including] any permanent or temporary institution, facility, location, or site where medical services are provided that are similar to such institutions," 85 Fed. Reg. at 19,351 (§ 826.30(c)(1)(i));

---

[10] The regulatory list also includes "[a]ny health care provider from whom an employer or the employer's group health plan's benefits manager will accept certification of the existence of a serious health condition to substantiate a claim for [FMLA] benefits."  29 C.F.R. § 825.102.  The plain import of this language is that, to be a health care provider, a person must be able to certify that the employee has a "serious health condition" under the FMLA.

- "any individual employed by an entity that contracts with any of these institutions described above to provide services or to maintain the operation of the facility where that individual's services support the operation of the facility," *id.* (§ 826.30(c)(1)(ii)); and

- "anyone employed by any entity that provides medical services, produces medical products, or is otherwise involved in the making of COVID-19 related medical equipment, tests, drugs, vaccines, diagnostic vehicles, or treatments," *id.* (§ 826.30(c)(1)(ii)).

Under this definition, *anybody* employed at a college or university that offers health care instruction—including an English professor, a teaching assistant, or a librarian—is subject to exclusion as a "health care provider." *Anybody* employed at a medical school is covered; a person who manages a dining hall for medical students or information technology for the school thus may be denied the FFCRA's protections. *Anybody* employed at a hospital is covered, which presumably includes a person working in a gift shop in a hospital's outpatient wing. *Anybody* employed by a contractor that provides services to any of the entities listed in the Final Rule is also covered. So, all employees of a payroll processing firm or vending-machine contractor contracted by any of the listed entities may be denied the FFCRA's protections.

These non-exhaustive examples illustrate that Defendants' definition of "health care provider" is plainly inconsistent with the FMLA definition Congress directed the agency to use.[11] "What we have here, in reality, is a fundamental revision of the statute." *MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 (1994); *see also, e.g.*, *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 328 (2014) (it is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate"); *NRDC*,

---

[11] The Department concedes in the Final Rule that the definition of "health care provider" it uses is different from the definition employed under regulations implementing the FMLA. 85 Fed. Reg. at 19,334–35 ("The Department recognizes that health care providers whom an employer may exempt pursuant to sections 3105 and 5102(a) of the FFCRA is broader than the definition of health care provider under 29 CFR 825.102.").

894 F.3d at 108-13 (vacating the agency's decision for failure to comply with unambiguous statutory text).  Congress did not intend that *all* employees of the huge number of entities listed in the Final Rule could become "health care providers" by regulatory fiat.  *See ACA Int'l v. FCC*, 885 F.3d 687, 692, 697-99 (D.C. Cir. 2018); *Fin. Planning Ass'n v. SEC*, 482 F.3d 481, 488 (D.C. Cir. 2007); *cf. New York*, 414 F. Supp. 3d at 525 (agency's definition of "health care entity" was "broader" than that in two underlying statutes and "cannot be justified as a mere 'housekeeping' exercise").

Defendants appear to contend that they may construe the phrase "any other person determined by the Secretary to be capable of providing health care services" in the FMLA's "health care provider" definition differently under the FFCRA than they construe it under the FMLA.  85 Fed. Reg. at 19,334-35.  This approach is not consistent with the statute.  The FMLA has one definition for "health care provider."  29 U.S.C. § 2611(6).  That definition applies under the FMLA's pre-existing provisions, *id.* §§ 2612-2619; it applies to the FMLA provisions newly-added by the FFCRA, *id.* § 2620; and it applies to the FFCRA's paid sick leave provisions, *see* FFCRA § 5110(4).  The Department cannot apply identical statutory text so differently and ignore Congress's use of precisely the same terms and definitions.  *See, e.g.*, *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1260 (D.C. Cir. 1996) (single statutory standard for royalty payments must be applied alike to different types of payments); *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (presumption that identical terms used in the same statute "are intended to have the same meaning") (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 43 (1932)).

Nor does the FFCRA's delegation of rulemaking authority help Defendants' position.  The FFCRA does not permit Defendants to redefine the term "health care provider," but instead

only permits Defendants to "exclude *certain* health care providers" from the definition of eligible employees for emergency family leave and paid sick leave.  *See* FFCRA § 3102(b) (adding FMLA §§ 110(a)(3)(A)) (emphasis added); *see also* FFCRA § 5111(1) (same).  These provisions only reinforce that Congress intended broad protection for affected employees, granting the Department discretion to exclude only *certain* providers.  "Certain" (as used here) refers to "particular," or "some," health care providers—but not *all* health care providers, and certainly not every worker with an attenuated connection to the health care industry.  *See* Oxford English Dictionary, Entry 29975 ("With *plural n.*, often (like *some*) referring to a number, usually: Some definitely, some at least, a restricted or limited number of.").

Defendants may argue that their expansive definition reflects a policy judgment that accounts for the present circumstances.  But no policy rationale justifies the definition Defendants adopted—which outstrips the statutory definition Congress directed Defendants to use, far exceeds the policy rationale Defendants invoke, and would exclude vast swaths of the economy from a vital economic benefit Congress provided to keep employees home so they do not spread COVID-19 in the midst of a public health and economic crisis.

## III.   The Final Rule violates the APA because it exceeds the Department's statutory authority under the FFCRA.

Like any agency, the Department of Labor can exercise only the powers Congress has given it.  *NRDC*, 894 F.3d at 108 (quotation marks omitted).  The APA thus requires this Court to set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  In determining whether agency action exceeds statutory authority, "the question . . . is always whether the agency has gone beyond what Congress has permitted it to do."  *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

A.    **The Department has no statutory authority either to prohibit intermittent leave or to condition its use on employer consent.**

The Final Rule exceeds Congress's grant of authority because it invents new restrictions on an employee's use of paid leave, allowing intermittent leave only for certain of the qualifying leave conditions, and then only if the employer affirmatively agrees to permit it.  85 Fed. Reg. at 19,353 (§§ 826.50(a)-(c)).  The Final Rule thus *bars* the use of leave in many instances without the employer's consent—unless the employee uses all of the time at once.  But Congress did not authorize the Department to require that all leave be taken in a continuous period, and such a drastic curtailment of vital leave time is neither lawful nor reflective of real-world circumstances.

The Final Rule contains inconsistent restrictions on intermittent leave.  For emergency family leave, the Final Rule only allows intermittent leave—that is, leave taken in separate periods of time—when the employer affirmatively agrees to allow it.  85 Fed. Reg. at 19,353 (§§ 826.50(a), (b)(1), (c)).  Otherwise, emergency family leave must be taken in "one continuous period."  *Id.* (§ 826.50(a)).  With regard to paid sick leave, three different restrictions apply.  First, employees who are teleworking may take intermittent leave only if the employer allows.  *Id.* (§ 826.50(c)).  Second, employees reporting to a worksite may only take intermittent leave where they require paid sick leave to care for a child whose school is closed; and again, only with the employer's consent.  *Id.* (§ 826.50(b)(1)).  Third, employees reporting to a worksite and taking paid sick leave for any other reason are prohibited from taking intermittent leave.  *Id.* (§ 826.50(b)(2)).

The Final Rule's intermittent leave restrictions exceed the Department's statutory authority.  First, the FFCRA requires an employer to grant leave of up to certain amounts of time—ten days for paid sick leave, and twelve weeks for emergency family leave.  *See supra* at 3-5.  The statute does not authorize either Defendants or employers to require that these amounts

17

of time be used in a single, continuous period or be permanently lost.  That absence is telling: In the FMLA, Congress expressly provided that an employer's consent was required for certain types of family and medical leave to be used intermittently.  29 U.S.C. § 2612(b)(1).  Congress did not enact such language with respect to the EFMLEA or EPSLA.  "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015).

Second, the text of both the EFMLEA and the EPSLA confirm that Congress enacted no such limitation.  The EFMLEA, for example, provides that following the initial ten-day period of unpaid leave, "[a]n employer shall provide paid leave for *each day of leave* under [the emergency family leave provision] that an employee takes," FFCRA § 3102(b) (adding FMLA § 110(b)(2)(A)) (emphasis added)—suggesting a requirement that applies to "each day" and not a larger block of time.  *See, e.g.*, *United States v. Luongo*, 11 F.3d 7, 10 (1st Cir. 1993) ("only . . . plausible construction" of statute was to impose separate assessment for "each offense"). Similarly, the EPSLA defines "paid sick time" as "an *increment* of compensated leave that . . . is provided by an employer for use during an absence from employment for a reason" allowed under the statute, FFCRA § 5110(5)(A)(i) (emphasis added)—suggesting leave that can be used in increments of time, not just as one continuous, uninterrupted period.  Confirming this understanding, the EPSLA provides for paid sick time "for an *amount of hours*," *see id.* § 5102(b)(2) (emphasis added); *see also id.* § 5102(d).  Had Congress wished to refer to a group of days or hours as part of a larger unit of time, it would have said so.  *See, e.g.*, 29 U.S.C. § 207(a)(2)(A)-(C) (referring to "workweek[s]" of various lengths).

The EFMLEA also covers employees who work intermittently—that is, "an employee whose schedule varies from week to week to such an extent that an employer is unable to

determine with certainty the number of hours the employee would have worked if such employee had not taken leave," FFCRA § 3102(b) (adding FMLA § 110(b)(2)(C))—and thus necessarily take leave intermittently.  The EPSLA likewise covers employees who work only intermittently. *Id.* § 5102(b)(1)(2)(B).  It is not apparent why Congress would enable intermittent leave for part-time workers or workers with a varying schedule, and not for full-time employees.

Third, in the midst of the coronavirus crisis, the circumstances for which Congress authorized both emergency family leave and paid sick leave are—by their nature—of highly uncertain duration, and do not operate in neat blocks of twelve weeks or ten days.  For example:

- An employee experiencing symptoms of COVID-19 and seeking a medical diagnosis, *see* FFCRA § 5102(a)(3), may not require ten consecutive work days to do so.  Nor does it make sense, if that person turns out to have only a cold, to deny EPSLA leave if that person later develops symptoms again and needs to seek another diagnosis.

- A governmental quarantine, isolation, or "stay at home" order, *see id.* § 5102(a)(2), (4); or a "public health emergency" that causes a school or daycare closure, *see id.* § 3102(b) (adding FMLA §§ 110(a)(2)(A), (B)), may not last precisely ten days or twelve weeks. Indeed, the present stay-home order by Governor Cuomo in New York became effective on March 22, 2020 and lasts until April 29, 2020—a period of five and a half weeks.[12]

- A person may need to care for a family member subject to self-quarantine because of COVID-19, *see id.* § 5102(a)(4); and then later need to care for herself or another family member for the same reason, *see id.* §§ 5102(a)(2)-(4).

Nothing suggests that Congress intended to deny leave in these circumstances.  To the contrary, Congress's goals in enacting the paid leave provisions of the FFCRA—to suppress the rate of coronavirus transmission, and to protect the economic well-being of employees who must stay home to care for themselves or a family member—would be undermined by Defendants' decision to deny intermittent leave entirely or unless an employer consents.

---

[12] State of N.Y. Exec. Order 202.8, *Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency* (Mar. 20, 2020); State of N.Y. Exec. Order 202.14, *Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency* (Apr. 7, 2020) (extending the Governor's stay-home order to April 29, 2020).

Finally, the tax credits that Congress enacted for employers confirm that Congress did not intend either emergency family leave or paid sick leave to be all-or-nothing propositions.  With respect to both EFMLEA and EPSLA leave, Congress enacted a credit tied to the leave wages paid to an individual; and in each instance, that credit expressly provides for what to do in the event that an employee receives such leave wages over the course of multiple calendar quarters.

Section 7001 of the FFCRA provides an employer payroll tax credit for wages "for any day" the employee takes EPSLA leave.  The manner of calculating such credit, "in any calendar quarter," depends on whether the number of leave days taken in that quarter and "the aggregate number of days so taken into account for all preceding calendar quarters" exceeds ten.  FFCRA § 7001(b)(2).  Thus, Congress plainly contemplated that an employee could take such leave over a series of "all calendar quarters"—and that an employer would be entitled to a credit over that entire period.  Because such leave is eighty hours for a full-time employee, and less for a part-time employee, Congress's reference to "all preceding calendar quarters" makes little sense unless the leave could be used intermittently.  It would be unlikely for a consecutive eighty-hour period to occur across two calendar quarters and impossible for it to do so over three quarters.

Section 7003 of the FFCRA contains similar language with respect to the employer payroll tax credit for EFMLEA benefits.  *Id.* § 7003(b)(1) (providing a credit "for any day (or portion thereof)" an employee takes leave, and providing a maximum amount of tax credit of "in the aggregate with respect to all calendar quarters, $10,000").  This section's reference to the use of EFMLEA leave "for any day (or portion thereof)" also further confirms that such leave can be used intermittently.  These provisions unmistakably demonstrate that Congress intended employees to be able to take, and employers to be able to take a tax credit for, both emergency family leave and paid sick leave intermittently—not all at once.  The Final Rule's intermittent

leave restrictions should be vacated under the APA.

**B.** **The Department has no statutory authority to impose the Final Rule's documentation requirements as a precondition to taking leave.**

The Final Rule also violates the APA because it imposes documentation requirements as a precondition to leave that Congress did not authorize the Department to impose.

The Final Rule requires employees to submit certain documentation to their employers before exercising their statutory right to EFMLEA or EPSLA leave. *See* 85 Fed. Reg. at 19,355 (§ 826.100). Employers are also permitted to ask for additional materials "as needed to support a request for tax credits pursuant to the FFCRA" and are "not required to provide leave if materials sufficient to support the applicable tax credit have not been provided." *Id.* (§ 826.100(f)). For more information, the Rule directs interested parties to an IRS website with FAQs about coronavirus-related tax credits. *Id.*

The statute forbids the Department from placing these *per se* obstacles in the path of an employee who needs to take leave from work quickly during a crisis founded on the rapid spread of a highly contagious, deadly disease. The EFMLEA squarely provides the governing principle: "In any case where the necessity for leave under section 102(a)(1)(F) for the purpose described in subsection (a)(2)(A) is foreseeable, an employee shall provide the employer with such notice of leave as is practicable." FFCRA § 3102(b) (adding FMLA § 110(c)); *see* CARES Act § 3611(3) (technical correction). The statute thus provides that only where the triggering event is "foreseeable" must an employee provide notice—and then, only whatever notice is "practicable." It follows that if the triggering event for leave is *not* foreseeable, no prior notice may be required. The EFMLEA thus bars any prior-notice mandate, and the agency is bound to follow that command. *Iancu*, 138 S. Ct. at 1355 ("[T]he duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer.").

This principle is consistent with the FMLA, which requires prior notice only where the necessity for leave is "foreseeable" based on expected birth, adoption placement, planned medical treatment, or a covered active-duty deployment.  29 U.S.C. §§ 2612(e)(1)-(3).  The Department's existing regulations regarding the FMLA certification requirements are consistent with this principle as well.  *See* 29 C.F.R. § 825.305(b).

The EPSLA also bars imposing documentation requirements as a precondition to an employee's right to paid sick leave.  The EPSLA authorizes employers to request only notice from employees, and only "*after* the first workday (or portion thereof) an employee receives paid sick time under" the EPSLA.  *See* FFCRA § 5110(5)(E) (emphasis added).  Forbidding the imposition of a notice requirement until *after* an employee has begun leave makes sense in the context of a rapidly spreading virus where the overarching goal is to avoid infecting employees and their families.  Moreover, the EPSLA requires that the Department prepare a "model of a notice" of employees' rights under the statute and to place it in "conspicuous places on the premises of the employer."  FFCRA § 5103.  That provision confirms Congress's desire to make exercising one's right to paid sick leave as simple as possible.  The EPSLA says nothing regarding notice other than those two provisions.  At most, the EPSLA authorizes maintaining some consistency with the EFMLEA on this point, *see* FFCRA § 5111(3)—suggesting that the notice procedures that may occur after the first day of EPSLA leave must incorporate the same foreseeability and practicality standards that govern leave under the EFMLEA.

It is also telling that there is no language authorizing the Department to set additional, substantive notice requirements as preconditions for an employee using leave time.  Where Congress includes specific language on a subject in one portion of a statute, but not in another, the ordinary inference is that Congress intended no such requirement in the latter.  *MacLean*, 135

S. Ct. at 919.[13]  Here, that canon suggests Congress did not impose such a requirement on

EPSLA leave.  As noted above, the EFMLEA and FMLA recognize that in many instances the

reason for leave would not be foreseeable, and it would make little sense to require prior notice

where the employee could not reasonably foresee the need for leave.  "[I]f Congress had

intended such a sea change . . . it would have said so clearly."  *Bd. of Trustees of Leland Stanford*

*Jr. Univ. v. Roche Molecular Sys., Inc*., 563 U.S. 776, 792 (2011).

Finally, preconditioning leave is inconsistent with the purpose of the statute.  As the Final

Rule recognizes, "one of the FFCRA's main purposes in establishing paid leave" was to

"enabl[e] employees to leave the workplace *now* to help prevent the spread of COVID-19."  85

Fed. Reg. at 19,342 (emphasis added).  The Rule's unauthorized documentation requirements

accomplish the exact opposite, forcing employees to delay "leav[ing] the workplace" until they

have their employer's approval based on *two* federal agencies' documentation desires.  Given

that the Rule grants employers discretion to ask for additional documents, but does not set a time

for them to do so, the delay could be substantial.  Working families struggling to obtain medical

care or provide for their loved ones may be deterred from, unable to, or too late to exercise their

statutory rights to paid sick leave—adding economic hardship to their already mounting concerns

and exacerbating the spread of COVID-19 that Congress sought to curb.

## IV.     The Court should sever and vacate the challenged provisions of the Final Rule.

As each of the challenged provisions violates the APA by failing to comport with the

---

[13] Indeed, the FFCRA contains provisions requiring self-employed workers to maintain documentation demonstrating their eligibility for tax credits for sick leave or family leave.  *See* FFCRA §§ 7002(d)(2), 7004(d)(2).  Congress's use of particularized documentation requirements for one set of expected beneficiaries of the statute, but not for employees covered by the EFMLEA and EPSLA, further confirms that Congress intended no such requirements to be preconditions for the use of leave time.

FFCRA, Plaintiff is entitled to summary judgment on all its claims.  Where, as here, the

challenged provisions are easily severable from the remainder of the Final Rule, this Court

should vacate just those provisions.

The APA requires courts to "hold unlawful and set aside agency action" that is not in

accordance with law or in excess of statutory authority.  5 U.S.C. § 706(2).  "Agency action"

may include "the whole or a part of an agency rule."  5 U.S.C. § 551(13) (incorporated by 5

U.S.C. § 701(b)(2)).  "Thus, the APA permits a court to sever a rule by setting aside only the

offending parts of the rule." *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 351 (D.C.

Cir. 2019).  To that end, the "'invalid part' of a statute or regulation 'may be dropped if what is

left is fully operative as a law,' absent evidence that 'the [agency] would not have enacted those

provisions which are within its power, independently of that which is not.'" *United States v.

Smith*, 945 F.3d 729, 738 (2d Cir. 2019) (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)).

As an initial matter, severing the challenged provisions would not hamper the operation

of the Final Rule.  The Rule's work availability requirements, 85 Fed. Reg. at 19,349-50

(§ 826.20(a)(2), (a)(6), (a)(9), (b)(1)); intermittent leave prohibitions, *id.* (§ 826.50(a)-(c)); and

documentation and related retention requirements, *id.* at 19,355-56 (§§ 826.100, 826.140(a)), are

all distinct stand-alone provisions that are not intertwined with the rest of the Rule.  No other

aspects of the Final Rule rely on these discrete provisions for their continued viability.

The only other provision of the Final Rule that Plaintiff challenges—the Final Rule's

capacious definition of "health care provider"—expressly carves itself out from the remainder of

the regulation.  By its own terms, the definition of "health care provider" at § 826.30(c)(1)

"applies only for the purpose of determining whether an Employer may elect to exclude an

Employee from taking leave under the EPSLA and/or the EFMLEA, and does not otherwise

apply for purposes of the FMLA or section 5102(A)(2) of the EPSLA." 85 Fed. Reg. at 19,351 (§ 826.30(c)(1)(iii)). The Final Rule otherwise uses the FMLA definition of "health care provider," as required by the FFCRA. *See* FFCRA § 5110(4). As such, severing the Final Rule's one-off definition would restore consistency to the Department's regulations by ensuring that the FFCRA's intended definition of "health care provider" applied throughout.

Nor would severing the challenged provisions force the Department to keep regulations on the books that it never intended to promulgate. Following the enactment of the FFCRA, the agency quickly issued the Rule "to assist working families facing public health emergencies arising out of Coronavirus Disease 2019 (COVID-19) global pandemic." 85 Fed. Reg. at 19,326. After severing the unlawful portions of the Final Rule, the remainder would continue to "sensibly serve the goals for which it was designed"—that is, to help families survive this pandemic. *MD/DC/DE Broadcasters Ass'n v. F.C.C.*, 253 F.3d 732, 734 (D.C. Cir. 2001).

Indeed, it would be absurd to claim that the Department would not have issued the Final Rule but for the inclusion of the challenged provisions. The Department moved quickly to issue the Rule just two weeks after the FFCRA was signed into law. It would defy logic to suggest that without the challenged provisions the Department would not have promulgated the lawfully authorized and procedurally proper parts of an emergency rule intended to prevent the compounding consequences of an ongoing public health crisis.

## CONCLUSION

The availability of paid leave to workers was a central component of the Congressional response to the coronavirus pandemic. But Defendants issued a Final Rule that so narrows employees' eligibility, and that so burdens employees' entitlement to paid leave, as to undermine the critical statutory goals of public safety and economic security. New York respectfully requests that the Court grant this motion for summary judgment.

25

DATED:  April 14, 2020

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Eric R. Haren, *Special Counsel*
Fiona J. Kaye, *Assistant Attorney General*
Daniela L. Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the State of New York*