# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK,<br><br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF LABOR; and EUGENE SCALIA, *in his official capacity as Secretary of Labor,*<br><br>      Defendants. | 20 Civ. 3020 |

**DECLARATION OF HEATHER BOUSHEY**

1. I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2. I am the president, CEO, and co-founder of the Washington Center for Equitable Growth ("Equitable Growth"). I am an economist with expertise in the U.S. labor market and social policy, with a Ph.D. from the New School for Social Research. I have written extensively on work and family issues, including two recent books, *Unbound: How Economic Inequality Constricts Our Economy and What We Can Do About It* and *Finding Time: The Economics of Work-Life Conflict.* I previously served as chief economist for Secretary of State Hillary Clinton's 2016 presidential transition team and as an economist for the Center for American Progress, the Joint Economic Committee of the U.S. Congress, the Center for Economic and Policy Research, and the Economic Policy Institute. I sit on the board of the Opportunity Institute and am an associate editor of *Feminist Economics*, and a senior fellow at the Schwartz Center for Economic and Policy Analysis at the New School for Social Research.

3. I am aware that the federal government recently issued a final rule, "Paid Leave Under the Families First Coronavirus Response Act," 85 Fed. Reg. 19,326 ("the Rule"). The Families First Coronavirus Response Act ("FFCRA") was written to combat the workplace spread of the novel coronavirus and COVID-19, the disease spread by the virus, by requiring covered employers to provide 2 weeks (up to 80 hours) of paid sick leave and up to an additional 10 weeks of paid expanded family and medical leave for specific reasons related to the novel coronavirus and COVID-19. The new Rule provides direction for the administration of the paid sick leave and paid expanded family and medical leave, including definitions of covered employers and procedures for exempting small businesses from the paid leave provisions. I have reviewed the Rule and am aware of its direct implications on the administration of paid leave under the Families First Coronavirus Response Act. I understand that this lawsuit challenges the Rule.

4.     Equitable Growth is a nonprofit research and grantmaking organization dedicated to advancing evidence-backed ideas and policies that promote strong, stable, and broad-based economic growth. Our fundamental questions have been whether and how economic inequality—in all its forms—affects economic growth and stability, and what policymakers can do about it. We work to build a strong bridge between academics and policymakers to ensure that research on equitable growth and inequality is relevant, accessible, and informative to the policymaking process. Since our founding in 2013, we have funded the work of more than 200 scholars and built a broader network through our working papers series, events, and convenings. By supporting research and bringing these scholars together to exchange ideas, we have learned a great deal and advanced a broad range of evidence-based policy approaches to addressing economic inequality and delivering broad-based economic growth to communities and families.

5.     Outside of leave provided through FFCRA, many workers do not have access to paid time away from work to address their own illness or to care for a sick relative. In 2019, 73 percent of private-industry workers had access to paid sick leave, but that access is not distributed equitably. Only 47 percent of workers in the bottom wage quartile and 43 percent of part-time workers have paid sick leave through their employers. Likewise, only 18 percent of private-industry employees have access to paid family leave that they can use to care for a loved one, and that number declines further for those workers in the bottom wage quartile and part-time workers (8 percent for both groups of workers).[1]

6.     Several states and localities have made legislative efforts to address these gaps in paid sick days coverage. Paid sick days are for short-term illnesses and generally paid for by employers. Currently, 11 states, the District of Columbia, and more than 20 cities and counties have passed paid sick days laws, requiring firms to provide employees with earned sick days that they may use to care for themselves or a family member during an illness. Such a law has been in effect since 2014 in New York City and requires employers with greater than five employees to allow workers to earn up to 1 week (40 hours) of paid sick time that they may use to address their own illness, that of a family member, or to cover their time away from work due to a public health emergency. The state of New York passed a similar law in 2020 that goes into effect in January 2021.[2]

7.     Similarly, several states have established social insurance programs to provide paid family and medical leave, addressing this coverage gap. Paid family and medical leave is distinct from paid sick days because the duration of leave lasts for weeks or months, rather than days. Eight states and the District of Columbia have enacted programs giving workers 4 weeks to 52 weeks of paid leave to care for a new child, a seriously ill family member, or recover from a serious illness, generally at about 60 percent of pay. In 2018, the state of New York expanded its longstanding Temporary Disability Insurance program to add paid family leave and is now providing 10 weeks of paid leave for family caregiving or to bond with a new child, in addition to 26 weeks for one's own serious medical condition.

8.     In March 2020, Congress passed the Families First Coronavirus Response Act, providing some private-industry workers with federally guaranteed paid sick leave and paid

---

[1] Patrick Pizzella and William Beach, "National Compensation Survey: Employee Benefits in the United States, March 2019" (Washington: U.S. Bureau of Labor Statistics, 2019).
[2] The National Partnership for Women and Families, "Paid Sick Days – State and District Statutes" (2020), available at https://www.nationalpartnership.org/our-work/resources/economic-justice/paid-sick-days/paid-sick-days-statutes.pdf.

family leave for the first time. FFCRA requires covered employers with fewer than 500 employees to provide all employees with 2 weeks (80 hours) of paid sick leave at the employee's regular rate of pay when an employee cannot work due to being subject to a governmental quarantine order, ordered by a health care provider to quarantine as a result of infection by the coronavirus, or experiencing symptoms of COVID-19; 2 weeks (80 hours) of paid sick leave at two-thirds of the employee's regular rate of pay when an employee cannot work due to a family member's experience with COVID-19; and up to an additional 10 weeks of paid expanded family and medical leave at two-thirds of the employees' regular rate of pay to care for a child whose school or childcare facility was closed down due to reasons related to the coronavirus and COVID-19.[3] Qualifying firms are eligible to receive tax credits to reimburse the cost of providing paid sick leave and/or paid expanded family and medical leave.[4] Firms can retain their regularly owed payroll taxes or request expedited payment from the Internal Revenue Service if there is not sufficient payroll taxes to cover the cost of providing such leave.[5]

9. According to the U.S. Department of Labor, the law helps reduce the workplace spread of COVID-19 by "ensuring that workers are not forced to choose between their paychecks and the public health measures needed to combat the virus."[6] Contrary to the intent of the FFCRA, the Rule promulgated by the Department of Labor significantly weakens the law's paid sick leave and paid family leave provisions in several ways.

10. FFCRA allows otherwise-qualifying employees to be denied paid sick leave or paid family and medical leave if the employee is "a health care provider or an emergency responder" as defined by the Rule.[7] The Rule issues an overly broad definition of healthcare providers and emergency responders.[8] In fact, under the current definition, workers with no experience in healthcare, such as cleaning staff in hospitals or administrative staff at medical schools, are considered providers under the Rule.

11. FFCRA allows small businesses with fewer than 50 employees to qualify for an exemption to the paid sick leave and paid expanded family and medical leave provisions when "the imposition of such requirements would jeopardize the viability of the business as a going concern."[9] The Rule allows the employer to self-determine what constitutes such a jeopardy under several broad categories. Small firms wishing to exempt themselves from these provisions of the FFCRA need only to document this determination. There is no oversight by the U.S. Department of Labor as to the appropriateness of such determination.[10]

12. The Rule also requires workers to submit extensive documentation to their

---

[3] U.S. Department of Labor Wage and Hour Division, "Families First Coronavirus Response Act: Employer Paid Leave Requirements" (2020), available at https://www.dol.gov/agencies/whd/pandemic/ffcra-employer-paid-leave#_ftnref2.
[4] *Families First Coronavirus Response Act* ("FFCRA"), Public Law 116-127 § 7001, 116th Cong. (March 18, 2020).
[5] Internal Revenue Service, "Treasury, IRS and Labor announce plan to implement Coronavirus-related paid leave for workers and tax credits for small and midsize businesses to swiftly recover the cost of providing Coronavirus-related leave," Press release, March 20, 2020, available at https://www.irs.gov/newsroom/treasury-irs-and-labor-announce-plan-to-implement-coronavirus-related-paid-leave-for-workers-and-tax-credits-for-small-and-midsize-businesses-to-swiftly-recover-the-cost-of-providing-coronavirus
[6] U.S. Department of Labor Wage and Hour Division, "Temporary Rule: Paid Leave under the Families First Coronavirus Response Act" (2020), available at https://www.dol.gov/agencies/whd/ffcra.
[7] FFCRA § 5111(1).
[8] 29 CFR 826.30(c)(1)(i).
[9] FFCRA § 5111(2).
[10] 29 CFR 826.40(b)(2).

employer prior to taking paid sick leave or paid expanded family and medical leave, including a reference to the government entity or healthcare provider that is requiring or encouraging the employee to remain isolated or quarantined due to the coronavirus and COVID-19.[11] Such requirements are burdensome to workers and may discourage workers from exercising their right to paid leave.[12]

13. The exemptions and conditions imposed by the Rule will result in millions of workers being denied coverage under the FFCRA. A recent analysis by the Center for American Progress finds that approximately 624,000 private-sector workers in the state of New York may be denied coverage under the FFCRA due to their status as healthcare providers and emergency responders under the Rule, while 2.3 million workers at small employers may be denied coverage if their employer seeks an exemption. Therefore, the rule has the potential to reduce the number of New Yorkers accessing paid leave under the FFCRA from nearly 50 percent to just more than 17 percent of the private workforce.[13] Denying such a large number of New Yorkers paid leave under the FFCRA will impose significant economic and administrative costs to the state.

14. By preventing many New Yorkers from accessing the paid sick leave and paid expanded family and medical leave under the FFCRA, the Rule could decrease revenue to the state of New York. Most simply, benefits paid under FFCRA are taxable income.[14] When workers who are prevented from accessing paid leave through FFCRA by the Rule take unpaid leave, less revenue accrues to the state.

15. Further, because the Rule prevents an overly broad group of employers from accessing federal reimbursement for paid leave from FFCRA, it will strain businesses and could lead to decreased tax revenue through business closures or decreases in payroll. This is particularly true in the state of New York, where many employers are required to provide paid sick days.[15] In normal economic times, researchers have found that such sick leave laws have no significant impact on employment or employees' wages, but in the extreme economic conditions created by the coronavirus and COVID-19, it is possible that small costs will affect business operations.[16]

16. Additionally, in decreasing access to leave under the FFCRA, the Rule is likely to increase costs to the state of New York. Research suggests that when workers are unable to access paid sick leave and paid family and medical leave, they are more likely to separate from their employers.[17] One study using several panels of the Medical Expenditure Panel Study found

---

[11] 29 CFR 826.100.

[12] Pamela Herd and Donald Moynihan, *Administrative Burden: Policymaking by Other Means* (New York: Russel Sage Foundation, 2019).

[13] Sarah Jane Glynn, "Coronavirus Paid Leave Exemptions Exclude Millions of Workers from Coverage" (Washington: Center for American Progress, 2020), available at https://www.americanprogress.org/issues/economy/news/2020/04/17/483287/coronavirus-paid-leave-exemptions-exclude-millions-workers-coverage/.

[14] Internal Revenue Service, "COVID-19-Related Tax Credits: Special Issues for Employees and Additional Questions FAQs" (2020), available at https://www.irs.gov/newsroom/covid-19-related-tax-credits-special-issues-for-employees-and-additional-questions-faqs#employees.

[15] FFCRA § 7001.

[16] Stefan Pichler and Nicolas Ziebarth, "Labor Market Effects of U.S. Sick Pay Mandates," *Journal of Human Resources* (forthcoming).

[17] Jack Smalligan and Chantel Boyens, "Paid medical leave research: What we know and what we need to know to

4

that access to paid sick leave decreases the probability of job separation by 25 percent.[18] When workers lose their earnings from employment, most are unable to fall back on personal savings: 41 percent of families do not have $2,000 to smooth these types of income shocks.[19] Instead, they must turn to government programs. Thus, increases in job separations caused by the Rule will increase the financial and administrative stresses on the public benefits programs of the state of New York. Increases in unemployment claims will strain the state's Unemployment Insurance trust fund, which is already paying out a record number of claims.[20]

17.     When workers do not have access to paid leave, they are often forced to take unpaid time off to address their medical or caregiving needs. In a 2016 survey by the Pew Research Center, 52 percent of workers who took family or medical leave did so with no pay (36 percent) or only partial pay (16 percent). These workers, particularly those with lower incomes, face financial hardship. Fifty-seven percent of employees with incomes of $30,000 or less took on debt after a partially compensated or uncompensated leave, and nearly half (48 percent) relied on public assistance to cover lost wages during their leave.[21] A 2012 survey supported by the Department of Labor found that nearly 15 percent of uncompensated or partially compensated leave takers overall went on public assistance while on leave.[22] These findings contributed to the Department of Labor's conclusion that paid leave programs "reduce the need for workers to rely on public assistance benefits to replace lost wages."[23] As the Rule will force some New Yorkers to opt for unpaid leave, the state of New York is likely to experience increased costs to its public assistance programs.

18.     Many unemployed workers or workers taking unpaid leave will be eligible for the state of New York's Supplemental Nutrition Assistance Program, or SNAP, formerly known as food stamps—indeed, when unemployment increases SNAP enrollment surges.[24] Even if workers remain attached to their jobs, lack of access to sick leave is associated with increased likelihood of participation in food assistance programs: Researchers using the National Health Interview Survey data found that, after controlling for many factors, working-age adults without access to paid sick leave were 1.41 times more likely to participate in their state or county

---

improve health and economic well-being in the United States" (Washington: Washington Center for Equitable Growth, 2020), available at https://equitablegrowth.org/research-paper/paid-medical-leave-research/.
[18] Heather Hill, "Paid Sick Leave and Job Stability," *Work and Occupations* 40 (2) (2013).
[19] The Pew Charitable Trust, "The Role of Emergency Savings in Family Financial Security: What Resources Do Families Have for Financial Emergencies" (2015), available at https://www.pewtrusts.org/-/media/assets/2015/11/emergencysavingsreportnov2015.pdf.
[20] Wayne Vroman and Stephen Woodbury, "Financing Unemployment Insurance," *National Tax Journal* 67 (1) (2014): 253–268; Berkeley Lovelace Jr., "New York state's unemployment system 'collapsed' following a surge in claims, Gov. Cuomo says," CNBC, April 21, 2020, available at https://www.cnbc.com/2020/04/21/new-york-states-unemployment-system-collapsed-following-a-surge-in-claims-gov-cuomo-says.html.
[21] Juliana Menasce Horowitz and others, "Americans Widely Support Paid Family and Medical Leave, but Differ Over Specific Policies" (Washington: Pew Research Center, 2017), available at https://www.pewsocialtrends.org/2017/03/23/americans-widely-support-paid-family-and-medical-leave-but-differ-over-specific-policies/.
[22] Jacob Alex Klerman, Kelly Daley, and Alyssa Pozniak, "Family and Medical Leave in 2012: Technical Report" (Cambridge, MA: Abt Associates Inc., 2012), available at https://www.dol.gov/sites/dolgov/files/OASP/legacy/files/FMLA-2012-Technical-Report.pdf.
[23] U.S. Department of Labor, "The Cost of Doing Nothing: The Price We All Pay Without Paid Leave Policies to Support America's 21st Century Working Families" (2015), available at https://digitalcommons.ilr.cornell.edu/cgi/viewcontent.cgi?article=2609&context=key_workplace.
[24] Kenneth Hanson and Victor Oliveira, "How Economic Conditions Affect Participation in USDA Nutrition Assistance Programs," *USDA-ERA Economic Information Bulletin* 100 (2012), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2176939.

welfare systems and 1.34 times more likely to receive food assistance. Because the state of New York shares the cost of administering SNAP with the federal government, increased SNAP participation will result in higher costs to the state.[25]

19. By denying workers access to paid sick leave and paid expanded family and medical leave, the Rule may also strain the state's system for providing supplemental disability benefits. Evidence suggests that Social Security Disability Insurance, or SSDI, is a countercyclical program, meaning that use of the program increases when people experience unemployment in a slack labor market.[26] Low-income SSDI recipients also receive Supplemental Security Income, or SSI, benefits, so increases in work separations caused by the Rule would likely increase both SSDI and SSI participation. The state of New York provides SSDI and SSI top-off benefits through its State Supplemental Program, or SSP.[27] The state will bear the cost of any increase in SSP benefits stemming from the Rule.

20. Reductions in access to paid leave among New Yorkers resulting from the Rule also are likely to increase the spread of the coronavirus and COVID-19, which would lead to added costs for the state of New York's healthcare system and health programs. The public health benefits of paid leave are particularly important to the state, which has experienced the worst community spread of the novel coronavirus in the country. As of May 1, 2020, more than 300,000 individuals have tested positive for COVID-19.[28] Recent antibody tests suggest that nearly 15 percent of the state's and 25 percent of New York City's population have contracted the coronavirus.[29]

21. When workers have access to paid sick leave, they are less likely to work while sick and thus less likely to spread illness to their co-workers and clients. Research on state and local sick leave mandates in the United States finds a significant reduction in the general flu rate after the mandates were implemented.[30] Recent estimates suggest that between 1 percent and 12 percent of symptomatic, working-aged COVID-19 carriers are admitted to hospitals, with older individuals being more likely to be hospitalized.[31] Thus, restricting access to paid leave under FFCRA could increase costly emergency room visits and other uses of the hospital system. The state's Medicaid system may absorb these costs, or they may be absorbed by the hospital system itself when patients lack insurance and private resources to pay the cost of the hospital visits.[32]

---

[25] Center on Budget and Policy Priorities, "Policy Basics: The Supplemental Nutrition Assistance Program (SNAP)" (2019), available at https://www.cbpp.org/research/food-assistance/policy-basics-the-supplemental-nutrition-assistance-program-snap.

[26] Andreas Mueller, Jesse Rothstein, and Till von Wachter, "Unemployment Insurance and Disability Insurance in the Great Recession." Working Paper 19672 (National Bureau of Economic Research, 2013).

[27] New York State Office of Temporary and Disability Assistance, "New York State Supplement Program (SSP)" (2020), available at https://otda.ny.gov/programs/ssp/.

[28] New York State Department of Health, "NYSDOH COVID-19 Tracker" (2020), available at https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n.

[29] Office of Governor Andrew Cuomo, "Amid Ongoing COVID-19 Pandemic, Governor Cuomo Announces Phase II Results of Antibody Testing Study Show 14.9% of Population Has COVID-19 Antibodies," Press release, April 27, 2020, available at https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-cuomo-announces-phase-ii-results-antibody-testing-study.

[30] Stefan Pichler and Nicolas Ziebarth, "The Pros and Cons of Sick Pay Schemes: Testing for Contagious Presenteeism and Noncontagious Absenteeism Behavior," *Journal of Public Economics* 156 (2017): 14–33.

[31] Robert Verity and others, "Estimates of the severity of coronavirus disease 2019: a model-based analysis," *The Lancet Infectious Diseases* (2020).

[32] Kevin Miller, Claudia Williams, and Youngmin Yi, "Paid Sick Days and Health: Cost Savings from Reduced

Indeed, access to paid time off to care for one's health is associated with a significantly lower risk of mortality across many conditions.[33] The increased spread of the novel coronavirus and COVID-19 through workplaces would also result additional costs to the state of New York's Workers' Compensation program: When workers contract COVID-19 on the job, they are eligible for Workers' Compensation benefits.[34] They are also likely to be eligible for state-provided temporary disability insurance, up to a maximum benefit of $2,043.92.[35]

22.  FFCRA also allows workers to take paid time away from work to care for a sick loved one who becomes infected by the coronavirus and contracts COVID-19, which would reduce the burden on New York's healthcare systems and the state paid family leave program. Paid caregiving leave prevents infected caregivers from carrying the coronavirus virus back to their workplaces. Importantly, it also allows care recipients to receive care and attention from a loved one, decreasing the likelihood that they need care from state-funded systems. Indeed, researchers studying California's paid family and medical leave system found that the program was associated with an 11 percent decline in nursing home utilization by older adults, probably because family members could use paid time off to respond to health and caregiving concerns before they escalated to the point of requiring nursing home care.[36] Workers who are carved out of FFCRA paid leave to care for family members will either access the state's paid family leave program—increasing costs to the state—or go without paid leave and thus will likely increase costs to state-funded care systems. While the novel coronavirus and COVID-19 have no known treatment or cure, there may be some cases where hospitalization could have been avoided if the patient had access to supportive care at home.

23.  The current coronavirus pandemic and the U.S. Department of Labor's regulatory interpretation of the FFCRA is set to reduce revenue to the state of New York and will impose significant financial and administrative burdens on state's Unemployment Insurance, SNAP, SSP, Medicaid, Workers' Compensation, Temporary Disability Insurance, paid family leave, and healthcare systems, all of which are currently supporting New Yorkers through the health and economic challenges they are facing due to the pandemic. By creating unnecessary administrative barriers to benefit access, adopting a broad definition of "healthcare providers" and "first responders," and implementing a broad opt-out system for small employers with no federal oversight, the Rule will deny paid sick leave and paid expanded family and medical leave to many workers who should qualify. The public health and economic consequences for New York are likely to be significant as state systems try to fill and respond to the benefit gaps that Congress intended to address with the FFCRA.

I declare under penalty of perjury that the forgoing is true and correct and of my own personal knowledge.

---

Emergency Department Visits" (Washington: Institute for Women's Policy Research, 2011).

[33] Daniel Kim, "Paid Sick Leave and Risks of All-Cause and Cause-Specific Mortality among Adult Workers in the USA," *International Journal of Environmental Research and Public Health* 14 (10) (2017): 124.

[34] Letter from Clarissa Rodriguez to Carriers and Payers of Workers' Compensation, April 15, 2020, available at http://www.wcb.ny.gov/content/main/TheBoard/WCB_COVID19_LtrtoCarriers.pdf.

[35] New York Social Insurance Fund, "Instructions for taking Disability and/or Paid Family Leave for yourself due to COVID-19 Quarantine/Isolation" (2020), available at https://ww3.nysif.com/-/media/Files/DISABILITY_BENEFITS/PDF/SELF_COVID19_NYSIF.ashx?la=en&hash=E1DE954A1856C5CE0407F52EE28A90A361510FA1.

[36] Kanika Arora and Douglas Wolf, "Does Paid Family Leave Reduce Nursing Home Use? The California Experience," *Journal of Policy Analysis and Management* 37 (1) (2018): 38–62.

Executed on May 5, 2020 in Washington, D.C.

                                       *[signature]*
                                       Heather Boushey, Ph.D.
                                       President and CEO
                                       Washington Center for Equitable Growth